# EXHIBIT 4
## United States v Andrew Rogers
## COMPILATION OF DOCKET ENTRIES

114 - Rogers Order Granting Depositions

250 - Order Granting Certain Discovery

288 - Defense Status Report Depositions Taken

294 - Government Motion to Seal Peterson and Haines Depositions

295 - Defense Objection to Sealing Peterson and Haines Depositions

296 - Defense Status Report Attaching Peterson Deposition

302 - Government Continued Request to Seal Depositions

309 - Court Grants Evidentiary Hearing on Rogers Motion to Strike NOI

310 - Order Granting Discovery by April 1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## TERRE HAUTE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Cause No. 2:16-cr-18-WTL-CMM-1** |
| | ) | |
| **ANDREW N. ROGERS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ENTRY FOR MARCH 16, 2018

The Court held a telephonic status conference on March 12, 2018. The parties discussed

Rogers' motion to strike the notice of intent to seek the death penalty (Dkt. No. 92). It is the Court's

intent to allow depositions of Amanda Haines and James Peterson regarding the *Brady* violation

allegations Rogers makes in his motion. The Court will allow limited discovery preliminary to those

depositions. The parties shall attempt to reach an agreement as to the scope of that discovery. Any

such agreement shall be submitted to the Court by **March 30, 2018**. If the parties are unable to

reach an agreement, by **April 6, 2018**, each party shall file its proposal as to the scope of discovery

that should be allowed.

**SO ORDERED: 3/19/18**

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

Case 4:16-cr-00363 Document 129-4 Filed on 03/26/18 in TXSD Page 3 of 39

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Cause No. 2:16-cr-18-WTL-CMM-1** |
| | ) | |
| **ANDREW N. ROGERS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ENTRY ON MOTION FOR SPECIFIC DISCOVERY

This cause is before the Court on Defendant Andrew Rogers' First Supplemental Motion for Specific Discovery (Dkt. No. 94). The motion is **GRANTED IN PART** and **DENIED IN PART** as set forth below.[1]

As the Government argues, the information Rogers seeks in this motion is not discovery information about his guilt or the appropriate punishment. Rather, he seeks information relating to his assertion that the Government has committed misconduct during the course of this case. Prosecutorial misconduct can be the basis for the dismissal of an indictment, and the information ordered produced below is necessary to Court's determination of whether the indictment should be dismissed. The Court has previously expressed concerns about the accuracy of some of the Government's representations to the Court, and the materials already produced by the Government have not assuaged the Court's concerns about whether the Government has in facts committed misconduct as alleged by Rogers. As such, the Court exercises its inherent authority to order that the information be produced. In determining what items should be produced, the

---

[1]Rogers has withdrawn his request for Item 192 and Item 199.

Court has limited the items to those that are directly relevant to Rogers and the misconduct allegations in this case.

The Government objects to much of the requested discovery on the grounds of privilege. To the extent that the responsive documents ordered below are not privileged, they should be provided to Rogers' counsel **within 28 days of the date of this Entry**, along with a privilege log, that lists each responsive document that the Government withholds on privilege grounds. By the same date, the Government also shall deliver a copy of the privilege log along with an unredacted copy of each document listed therein, to the undersigned's chambers so that the Court may conduct an *in camera* review.

## I.  <u>DISCOVERY ITEMS REQUESTED</u>

The Court will address each discovery item objected to by the Government, in turn, below.

> *186. Any and all notes, reports, memoranda, or other documents prepared by James D. Peterson in connection with the case against Mr. Rogers*

These items shall be produced.

> *187. Any and all emails to or from James D. Peterson in connection with the case against Mr. Rogers*

These items shall be produced.

> *188. Any and all calendars, travel records, and telephone records for James D. Peterson during the time that he was assigned to the case against Mr. Rogers*

Rogers agrees that, in light of the representation that all of Peterson's interviews took place on the telephone, travel records may not be pertinent. The other items shall be produced.

> *189. Any and all requests for investigation from James D. Peterson in relation to the case against Mr. Rogers*

These items shall be produced.

*190. Any and all notes, reports, memoranda, or other documents prepared by Amanda Haines in connection with the case against Mr. Rogers*

These items shall be produced.

*191. Any and all emails to or from Amanda Haines in connection with the case against Mr. Rogers*

These items shall be produced.

*193. Any and all requests for investigation from Amanda Haines in relation to the case against Mr. Rogers*

These items shall be produced.

*194. Any and all notes, reports, memoranda, or other documents prepared by Jeffrey Kahan in connection with the case against Mr. Rogers*

These items shall be produced.

*195. Any and all emails to or from Jeffrey Kahan in connection with the case against Mr. Rogers*

These items shall be produced.

*196. Any and all documents, including, but not limited to, handwritten notes or emails, relating to any investigation by or referral to the Office of Professional Responsibility or the Office of the Inspector General regarding conduct by any government official in connection with the case against Mr. Rogers*

These items shall be produced.

*197. Any and all handwritten notes of any prosecutors, including but not limited to the U.S. Attorney's Office for the Southern District of Indiana and the Capital Case Section, relating to potential sentencing in the case against Mr. Rogers*

These items shall be produced.

*198. Any and all handwritten notes of any law enforcement investigators relating to the case against Mr. Rogers*

These items shall be produced.

*200. Any and all documents drafted, reviewed, or considered as part of the death-penalty authorization process in the case against Mr. Rogers, including, but not limited to drafts or final versions of the following:*
*a. Death-penalty evaluation form;*
*b. Non-decisional information form;*
*c. Capital Review Committee recommendation memorandum*

The Court declines to order the production of these items at this time.

*201. Any and all documents, from 2013 to present, describing U.S. Department of Justice policies, practices, or guidelines for the authorization of a case for the death penalty*

These items shall be produced.

*202. Any and all documents reflecting challenges by Jacabed Rodriguez-Coss to the ethical manner of running the Capital Case Unit or Capital Case Section*

The Court declines to order the production of these items at this time.

*203. Any and all notes of Capital Case Section Principal Deputy Chief Gwynn Kinsey, as described in his deposition in Rodriguez-Coss v. Sessions, No. 3:16-cv-00633, Doc. 46-4, pp. 9-102 (excerpts attached as Exhibit 2), relating either to the case against Mr. Rogers or to alleged ethical, discovery, or Brady violations regarding the Capital Case Unit or Capital Case Section*

These items shall be produced.

*204. Any and all notes of Gwynn Kinsey or other documents supporting Mr. Kinsey's statement, "It's not unusual for prison murders to have poor crime scene investigations because the Bureau of Prisons is mainly focused on running a prison, and the FBI may not be there on site to -- competent FBI agents may not be available and on site to do a comprehensive and competent crime scene investigation." (Exhibit 2, p. 20.)*

These items shall be produced.

*205. Any and all documents relating to the Capital Case Section management review described in, inter alia, the Kinsey deposition (Exhibit 2, p. 182) and the deposition of P. Kevin Carwile in Rodriguez-Coss v. Sessions, No. 3:16-cv-00633, Doc. 46-5, p. 131(excerpts attached as Exhibit 3)*

The Court declines to order the production of these items at this time.

*206. Any and all handwritten notes, reports, email correspondence, or other documents relating to the 2016 interview of Amanda Haines by Deputy Assistant Attorney General Sung-Hee Suh and James Mann, Chief of Staff to then-Assistant Attorney General Leslie Caldwell, as described in paragraph 15 of the Haines Declaration (attached to Mr. Rogers' Motion to Strike*

the Notice of Intent to Seek the Death Penalty  (Doc. 13) for the Government's Intentional Withholding and Destruction of Brady Information)

These items shall be produced.

207. Any and all records relating to allegations of sexual harassment or sexual discrimination in or relating to the Capital Case Unit or Capital Case Section, including, but not limited to, complaints of sexual discrimination by P. Kevin Carwile. (See Ex. 3, pp. 114-115.)

The Court declines to order the production of these items at this time.

208. A list of any and all current or former employees for whom settlements were paid in response to allegations of gender discrimination, sexual harassment, or any other form of employment related misconduct. If these settlements were in connection with litigation in any court or agency, the name of the court or agency where the action arose,  and the title and case number of the action. This request is made irrespective of whether nondisclosure agreements were executed.

The Court declines to order the production of these items at this time.

209. Any and all documents reflecting discovery failures in United States v. Hammer, No. 96-cr-0239 (M.D. Penn.), including, but not limited to, the "unearthing [of] dispositive Brady information only weeks before trial." (Haines Decl. at ¶ 7.) This request includes, but is not limited to, any documents reflecting Amanda Haines' bringing discovery/Brady "failures and deficiencies in Hammer to the attention of the Capital Case Section's supervisors, namely Capital Case Section Chief Kevin Carwile and Principal Deputy Chief Gwynn X. Kinsey[.]" (Haines Decl. at ¶ 8.)

The Court declines to order the production of these items at this time.

210. Any and all documents reflecting complaints by CCS attorney Bruce Hegyi of being asked to act unethically in the case of United States v. Fell, No. 5:01-cr-00012, (D. Vt.). (See Exhibit 2, pp. 185-86.)

The Court declines to order the production of these items at this time.

211. Any and all documents reflecting Capital Case Unit/Capital Case Section policies, practices, or guidelines from 2013 to present regarding the preservation and production of information to the defense under Federal Rule of Criminal Procedure 16, Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), the Jencks Act (18 U.S.C. § 350), or Federal Rule of Criminal Procedure 26.2

These items shall be produced.

*212. A complete copy of the Department of Justice "Blue Book"*

The Court declines to order the production of this item at this time.

*213. Any and all documents reflecting Capital Case Unit/Capital Case Section plans—or plans from other sections that apply to the Capital Case Unit/Capital Case Section—to implement the Giglio policy as described in § 6.13.10 of the Department of Justice Blue Book*

The Court declines to order the production of these items at this time.

*214. A list of current and former employees (including administrative staff) at the CCU or CCS from 2013 to the present, along with job titles*

The Court declines to order the production of these items at this time.

SO ORDERED:  12/18/2018

Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Copy via counsel of record via electronic communication

.

6

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 2:16-cr-0018-WTL-CMM |
| | ) | |
| ANDREW N. ROGERS, | ) | |
| | ) | |
| Defendant. | ) | |

---

## DEFENSE STATUS REPORT

---

Comes now, Andrew Rogers, by undersigned counsel, and notifies the Court

concerning the status of depositions ordered on March 16, 2018.

1. On February 8, 2019, James Peterson's deposition was taken in Washington,

    D.C. The transcript of that deposition has not yet been received.

2. On February 11, 2019, Amanda Haines' deposition was taken in

    Massachusetts.  A copy of that deposition is attached as Exhibit 1.  A copy of

    the video of that deposition will be delivered to the Court later today.

3. Counsel will update the Court further upon receipt of the James Peterson

    deposition.

Respectfully submitted,

*S/Nathan D. Chambers*
Nathan D. Chambers
303 16th Street, Suite 200
Denver, Colorado 80202
Telephone: (303) 825-2222
Facsimile: (303) 825-4010
nchambers@nathanchamberslaw.com

*S/Patrick J. Burke*
Patrick J. Burke
303 16th Street, Suite 200
Denver, Colorado 80202
Telephone: (303) 825-3050
Facsimile: (303) 825-2992
Patrick-J-Burke@msn.com

*S/Monica Foster*
Monica Foster
Indiana Federal Community
Defenders, Inc.
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
Telephone: 317-383-3520
Facsimile: 317-383-3525
Monica_Foster@fd.org

*S/Gwendolyn M. Beitz*
Gwendolyn M. Beitz
Indiana Federal Community
Defenders, Inc.
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
Telephone: 317-383-3520
Facsimile: 317-383-3525
Gwendolyn_Beitz@fd.org

**CERTIFICATE OF SERVICE**

I certify a copy of the foregoing DEFENSE STATUS REPORT was filed

electronically this 15th day of February 2019. Notice of this filing will be sent to the

parties of record by operation of the Court's electronic filing system. Parties may

access this filing through the Court's system.

*Monica Foster*
Monica Foster

# EXHIBIT 1

# SEALED

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### TERRE HAUTE DIVISION

UNITED STATES OF AMERICA,    )
                                       )
                Plaintiff,    )
                                       )
               v.          )     Cause No.: 2:16-cr-00018-WTL-CMM
                                       )
ANDREW N. ROGERS,       )
                                       )
                Defendant.    )

## GOVERNMENT'S MOTION FOR A PROTECTIVE ORDER (DEPOSITIONS)

The United States of America ("the government"), through undersigned counsels, files its motion for a protective order pertaining to the transcripts and audio/video recordings of the depositions taken in this cause, pursuant to Rule 16(d)(1) of the Federal Rules of Criminal Procedure. The government states as follows:

### Background

On March 16, 2018, this Court ordered that James Peterson and Amanda Haines be deposed. (*Entry for March 16, 2018*) (Doc. 114.))

On December 10, 2018, this Court ordered that Steven Eckert and James Warden be deposed. (*Entry on Motion to Reconsider Court's Order Permitting the Taking of Depositions*) (Doc. 243 at 2.))

The depositions were ordered to assist the court in determining whether to conduct an evidentiary hearing on defendant's allegations of government misconduct in this case. (*Id.*)

Steven Eckert was deposed on January 11, 2019, James Warden was deposed on January 22, 2019, James Peterson was deposed on February 8, 2019, and Amanda Haines was deposed on

February 11, 2019.  A transcript of each deposition has been prepared, and the depositions of

Steven Eckert, James Peterson, and Amanda Haines were recorded by audio/video.

<u>Rule 16 (d)(1), Fed.R.Crim.P.</u>

Federal Rule of Criminal Procedure 16(d)(1) Protective . . . Orders[,] provides, in pertinent

part, that "[a]t any time the [C]ourt may, for good cause, . . . restrict . . . discovery . . . or grant

other appropriate relief."

<u>Discussion</u>

In this case, there is good cause for the Court to issue a protective order.  The testimony

gathered during the depositions contains sensitive information that would be inappropriate to

disseminate to persons not directly involved with this case.  During the course of the depositions

both sides made various objections to the questions being asked, including objections based on

privilege.  The subjects of the depositions answered some of the objected-to questions, and

information which would normally not have been made part of the record, and which could be

stricken from the record by subsequent court ruling, is interspersed throughout the depositions.[1]

Finally, some of the depositions involved questioning about various personnel issues, including

bar investigations, outcomes of investigations by the Department of Justice's Office of

Professional Responsibility, and other internal personnel matters which are normally confidential

and which should continue to be protected from public dissemination.

The depositions were ordered to help this Court determine whether to conduct an

evidentiary hearing on defendant's allegations of government misconduct in this case.  It follows

that it would be permissible for the parties to use the depositions for investigation, trial preparation,

trial, and appeal in this case.  However, use of the depositions, including the audio/video

---

[1] This Court has yet to address the objections made during any of the depositions.

recordings, for other purposes, such as dissemination to others outside each side's trial team, circulation for use in other investigations or cases, production to the media, or posting on the internet, exceed the purpose for which the depositions were ordered and should be prohibited.

To ensure that the use of the depositions is restricted to the purpose for which they were ordered, the government requests that this Court enter an order instructing the parties in this cause and the subjects of the depositions to abide by the following terms regarding the transcripts and audio/video recordings of the depositions of Steven Eckert, James Warden, James Peterson, and Amanda Haines:

    a.  Copies of the referenced transcripts and audio/video recordings shall be used solely and exclusively in connection with this case (including investigation, trial preparation, trial, and appeal) and not for any other purposes.  If necessary in preparation for future proceedings, the subjects of the depositions shall be allowed to review the transcript and audio/video recordings of his/her own deposition.

    b.  Copies of the deposition materials (transcripts and audio/video recordings) shall be maintained by the defense in person, at their law firm. While the defense may provide copies of the deposition transcripts (NOT the audio/video recordings) to prison officials at ADX for Rogers, the transcripts will be maintained at ADX in accordance with its policies and no copies of personally identifiable information of the subjects of the depositions shall be provided to Rogers.

    c.  A copy of this protective order shall be kept with the copies of the deposition materials at all times.

    d.  In no event shall the parties in this cause and/or the subjects of the depositions disclose or describe any of the referenced transcripts and audio/video recordings to any other

person, entity, or other court or in any other legal proceedings, absent notice to and permission from this Court.

e.  Counsel shall promptly notify this Court if the transcripts and/or audio/video recordings are disclosed to anyone not designated by this Order or further order of the Court, either intentionally or unintentionally.

f.  At the end of these proceedings, the Defense shall retain the transcripts and audio/video recordings according to defense regulations and requirements and shall thereafter destroy the same.

## Defendant's Position

Counsel for defendant objects to this motion.

## Conclusion

The government, having shown "good cause," that is to prevent the depositions from being used for purposes not intended by this Court, moves for entry of the proposed protective order.

Respectfully submitted

JOSH J. MINKLER
UNITED STATES ATTORNEY

By:  s/William L. McCoskey
William L. McCoskey
Assistant United States Attorney

By:  s/ Abhishek Kambli
Abhishek Kambli
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I further certify that on February 22, 2019, a copy of the foregoing Government's Motion For a Protective Order (Depositions) was filed electronically. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


By:     <u>s/ Abhishek Kambli</u>
        Abhishek Kambli
        Assistant United States Attorney
        Office of the United States Attorney
        10 W. Market St., Suite 2100
        Indianapolis, Indiana 46204-3048
        Telephone: (317) 226-6333
        Email: Abhishek.Kambli@usdoj.gov

Case 4:13-cr-00063-CMM   Document 129-42   Filed in 03/26/19 in TXSD   Page 18 of 39

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 2:16-cr-0018-WTL-CMM |
| | ) | |
| ANDREW N. ROGERS, | ) | |
| | ) | |
| Defendant. | ) | |

---

**MR. ROGERS' RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR PROTECTIVE ORDER (DEPOSITIONS) (Dkt. 294)**

---

Defendant Andrew Rogers, by and through undersigned counsel, respectfully files this Response in opposition to the government's Motion for Protective Order (Depositions) (Dkt. 294).  Counsel state as follows:

I.      **Introduction**

More than a year ago, Mr. Rogers filed his Motion to Strike The Notice of Intent to Seek the Death Penalty for the Government's Intentional Withholding and Destruction of Brady Information (Dkt. 92) [hereinafter "Motion to Strike NOI"].  Mr. Rogers alleged that the government's intentional withholding of favorable information violated Mr. Rogers' due process rights and required dismissal of the death penalty as a possible sentence.  In the year since that filing, Mr. Rogers and the Court have learned that what was known in January 2018 was just the tip of the iceberg.  There is now no doubt that the government intentionally withheld from the defense information central to the sentencing decision in this case.  Nor is there doubt that the government likely never would have disclosed this information had it not been for Mr. Rogers' Motion to Strike

NOI—something Mr. Rogers has repeatedly alleged and the government has never denied. It also turns out that the government misled the Court about the existence of this unquestionably favorable information and about the extent to which the government had complied with its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963).

Due to ongoing questions regarding the extent of the government's misconduct, the Court ordered four depositions of government personnel: FCC Terre Haute chief psychologist Steven Eckert, Southern District of Indiana Assistant U.S. Attorney James Warden, former Capital Case Section (CCS) attorney Amanda Haines, and current CSS attorney James Peterson. The Court has stated that these depositions "are necessary to determine whether the Government has committed misconduct in [the] course of this case that is so egregious as to require the dismissal of the indictment." (Dkt. 243 at 2.) The Court has also ruled that the depositions are "necessary to determine whether an evidentiary hearing will be required on Rogers' misconduct allegations." (*Id.*)

Those depositions have been completed, and transcripts and videos have been deposited with the Court as they have become available. The government now comes and asks the Court for an expansive protective order that would limit how the defense can make use of these depositions, who may access the depositions, and even who the defense can talk to *about* the depositions. Indeed, under the terms as proposed by the government, defense counsel could not even provide a copy of the depositions to investigators or experts or confer with outside counsel, including Capital Resource Counsel.

## II. The government fails to demonstrate good cause for a sweeping protective order that would apply to the entirety of four depositions.

The government offers no valid reason for the Court to issue the requested protective order. The fact that the information contained in the depositions may be embarrassing to the United States Department of Justice is not a basis for the Court to protect that information from public scrutiny. In fact, it is a compelling reason for the Court to deny the requested protective order.

The Seventh Circuit has been clear that "[a]s a general proposition, pretrial discovery must take place in the [sic] public unless compelling reasons exist for denying the public access to the proceedings." *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994) (quoting *American Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 596 (7th Cir.1978)) (alterations in original). There exists a "common-law tradition of open litigation" and a "presumption in favor of disclosure." *United States v. Blagojevich*, 612 F.3d 558, 563 (7th Cir. 2010) (discussing disclosure of juror names); *see also id*. (recognizing "common-law right of access by the public to information that affects the resolution of federal suits"); *cf. In re Bank One Sec. Litig.*, 222 F.R.D. 582, 585 (N.D. Ill. 2004) ("There is a strong presumption toward public disclosure of court files and documents[.]").

This presumption in favor of openness and disclosure is strongest in criminal cases. *See United States v. Prewitt*, 34 F.3d 436, 439 (7th Cir. 1994) ("The public interest in the prosecution of crime is greater than the public interest in the settlement of civil disputes."). The Supreme Court has long appreciated the "strong tradition of publicity in criminal proceedings." *Gannett Co. v. DePasquale*, 443 U.S. 368, 414 (1979).

3

In recognition of the presumption of openness, protective orders in criminal cases are permitted only under certain conditions. Federal Rule of Criminal Procedure 16(d) allows the issuance of a protective order only on a showing of good cause. This criminal rule notably differs from the analogous civil rule which explicitly permits a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). Still, even under the civil rule, "[s]imply showing that the information would harm the [party's] reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983).

A fundamental condition for a protective order is missing here. Before issuing any protective order, a required first step is that the Court determine that the deposition testimony "in fact contain[s] confidential information." *Jepson*, 30 F.3d at 859. The government comes far from demonstrating that the depositions contain any confidential information whatsoever much less that they are so replete with confidential information that the entirety of all four depositions must be subject to the incredibly restrictive protective order the government suggests.

The government claims that the depositions contain "sensitive information" inappropriate for dissemination to people not directly involved with this case. (Dkt. 294 at 2.) The government does not, however, expound on what this sensitive information is. Is it that the government knew for years that the chief psychologist made statements completely supporting the defense theory of mitigation but kept it buried? Or that federal prosecutors misled this Court and the defense about the existence of

4

information favorable to the defense?  But that information is already part of the public

record.  And the government has not pointed out what other sensitive information there

may be.  There is nothing in the depositions about, for instance, Bureau of Prisons

security protocol.

The government also argues:

> During the course of the depositions both sides made various objections
> to the questions being asked, including objections based on privilege.  The
> subjects of the depositions answered some of the objected-to questions,
> and information which would normally not have been made part of the
> record, and which could be stricken from the record by subsequent court
> ruling, is interspersed throughout the depositions.

(Dkt. 294 at 2.)  This is simply not true.  Over the course of the four depositions, counsel

for Mr. Rogers made *one* objection.  That objection was merely that the information

sought was irrelevant.  Counsel for Mr. Rogers never made a single objection based on

privilege.

The government, on the other hand, repeatedly and frequently objected based on

privilege, and *every time* the government made an objection based on privilege,

government counsel instructed the witness not to answer, no matter how spurious the

claim of privilege.  For example, in the deposition of Assistant U.S. Attorney Warden

alone, the government lawyer assigned to defend the deposition instructed Mr. Warden

not to answer questions *33 times*.  These assertions of privilege included to questions

as seemingly innocuous (and not protected) as what Mr. Warden understood James

Peterson's role to be at the time of the defense presentation to the Capital Review

Committee.  In the deposition of former CCS attorney Haines, the government lawyer

assigned to defend that deposition also repeatedly instructed Ms. Haines not to answer

questions, going so far as to claim that the "tenor and tone" of a memorandum is

protected by the deliberative process privilege.  (*See* Dkt. 289 at 104:3-5 (under seal).)

Because government counsel instructed witnesses not to answer questions every time

counsel asserted a privilege, there is no arguably privileged information in the

depositions, and the government cannot meet the first requirement to a finding of good

cause for a protective order.

The government last argues that questions in the depositions involved "various

personnel issues, including bar investigations, outcomes of investigations by the

Department of Justice's Office of Professional Responsibility, and other internal

personnel matters . . . ."  (Dkt. 294 at 2.)  Such a vague assertion cannot demonstrate

good cause for the sweeping protective order the government seeks.  The only

testimony defense counsel can think of that would fit what the government describes

came from Ms. Haines, and the testimony was that the Office of Professional

Responsibility cleared Ms. Haines in any investigations—something not in need of

protection.  (*See* Dkt. 289 at 182:13-184:24 (under seal).)  One related bar investigation

is not yet closed out.  (*Id*.)  Counsel for Mr. Rogers are not clear what other personnel

matters the government could be referencing, and this is part of the problem with the

government's filing.  Additionally, even if there were something arguably of a

confidential nature, the solution would not be to enter a protective order regarding the

*entirety* of all four depositions.  The solution would be to designate certain portions as

confidential (after conferral) and have only those portions subject to a protective order.

Tellingly, the government did not pursue this reasonable and common route.

The fact that the government or government lawyers may be embarrassed by the

information contained in the depositions gives no right to have that information kept

secret.  The comment to Rule 16 makes clear that public scrutiny of possible government wrongdoing is not good cause to grant a protective order.  Rather, the types of considerations to be taken into account in deciding a request for a protective order are "the safety of witnesses and others, a particular danger or perjury or witness intimidation, the protection of information vital to the national security, and the protection of business enterprises from economic reprisals."  Fed. R. Crim. P. 16, advisory committee note to 1966 amendments.  None of those considerations are at play here.

There is a great public interest in information that sheds light on the integrity of government actions in a criminal, death-penalty prosecution.  Courts have "repeatedly recognized a public interest in the manner in which the DOJ carries out substantive law enforcement policy."  *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1093 (D.C. Cir. 2014) (FOIA case).  It is essential to our democratic system that the judgment of prosecutors be subject to "extensive public scrutiny and criticism."  *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1036 (1991); *cf. In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997) ("[W]here there is reason to believe the documents sought may shed light on government misconduct, the [deliberative process] privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government." (quotation marks omitted)).  "Publicity is justly commended as a remedy for social and industrial diseases.  Sunlight is said to be the best of disinfectants; electric light the most efficient policeman."  *Buckley v. Valeo*, 424 U.S. 1, 67 (1976) (quoting L. Brandeis, *Other People's Money* 62 (National Home Library Foundation ed. 1933)).  There can be no more important a matter to be subject to public

scrutiny than a prosecution where the U.S. government seeks to take the life of one of its own citizens.

This Court has already determined that the government demonstrated an "apparent lack of candor" in its filings to the Court regarding the government's compliance with its *Brady* obligations. (Dkt. 161 at 3.) The Court also determined that "the Government's assurances that it understands, has complied with, and will comply with its *Brady* obligations ring hollow." (*Id.*) Sworn testimony that sheds light on the government's compliance with its *Brady* obligations and potential malfeasance in the process of authorizing this case for the death penalty are subjects of the utmost public interest because they are central to the integrity of our federal criminal justice system. Furthermore, there is a demonstrated public interest in the ethics and integrity of the Department of Justice's Capital Case Section. *See* Katie Benner*, At the Justice Dept.'s Death Penalty Unit, Accusations of Favoritism, Gender Bias and Unwanted Groping*. N.Y. Times, Mar. 31, 2018, https://www.nytimes.com/2018/03/31/us/politics/justice-department-harassment-bias.html.

The Court need not parse the minutiae of the proposed protective order, because the government has not justified a protective order of any scope. Because the government has not demonstrated good cause for an order limiting from public scrutiny information that sheds important light on the integrity of federal death-penalty prosecutions, the Court should deny the requested order.

DATED this 22nd day of February 2019.

Respectfully submitted,

*S/Nathan D. Chambers*
Nathan D. Chambers
303 16th Street, Suite 200
Denver, Colorado 80202
Telephone: (303) 825-2222
Facsimile: (303) 825-4010
nchambers@nathanchamberslaw.com

*S/Patrick J. Burke*
Patrick J. Burke
303 16th Street, Suite 200
Denver, Colorado 80202
Telephone: (303) 825-3050
Facsimile: (303) 825-2992
Patrick-J-Burke@msn.com

*S/Monica Foster*
Monica Foster
Indiana Federal Community
Defenders, Inc.
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
Telephone: 317-383-3520
Facsimile: 317-383-3525
Monica_Foster@fd.org

*S/Gwendolyn M. Beitz*
Gwendolyn M. Beitz
Indiana Federal Community
Defenders, Inc.
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
Telephone: 317-383-3520
Facsimile: 317-383-3525
Gwendolyn_Beitz@fd.org

## CERTIFICATE OF SERVICE

I certify a copy of the foregoing MR. ROGERS' RESPONSE IN OPPOSITION TO

THE GOVERNMENT'S MOTION FOR PROTECTIVE ORDER (Dkt. 294) was filed

electronically this 22nd day of February 2019.  Notice of this filing will be sent to the

parties of record by operation of the Court's electronic filing system.  Parties may

access this filing through the Court's system.


_s/ Jennifer Feldman_
Jennifer Feldman

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 2:16-cr-0018-WTL-CMM |
| | ) | |
| ANDREW N. ROGERS, | ) | |
| | ) | |
| Defendant. | ) | |

---

**DEFENSE STATUS REPORT**

---

Comes now, Andrew Rogers, by undersigned counsel, and notifies the Court concerning the status of depositions ordered on March 16, 2018.

1. On February 8, 2019, James Peterson's deposition was taken in Washington, D.C. A copy of that deposition is attached as Exhibit 1. A copy of the video of that deposition will be delivered to the Court later today.

Respectfully submitted,

*Nathan D. Chambers*
Nathan D. Chambers
303 16th Street, Suite 200
Denver, Colorado 80202
Telephone: (303) 825-2222
Facsimile: (303) 825-4010
nchambers@nathanchamberslaw.com

*Patrick J. Burke*
Patrick J. Burke
303 16th Street, Suite 200
Denver, Colorado 80202
Telephone: (303) 825-3050
Facsimile: (303) 825-2992
Patrick-J-Burke@msn.com

*Monica Foster*
Monica Foster
Indiana Federal Community
Defenders, Inc.
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
Telephone: 317-383-3520
Facsimile: 317-383-3525
Monica_Foster@fd.org

*Gwendolyn M. Beitz*
Gwendolyn M. Beitz
Indiana Federal Community
Defenders, Inc.
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
Telephone: 317-383-3520
Facsimile: 317-383-3525
Gwendolyn_Beitz@fd.org

**CERTIFICATE OF SERVICE**

I certify a copy of the foregoing DEFENSE STATUS REPORT was filed

electronically this 26th day of February 2019.  Notice of this filing will be sent to the

parties of record by operation of the Court's electronic filing system.  Parties may

access this filing through the Court's system.


*Monica Foster*
Monica Foster

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## TERRE HAUTE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Cause No.: 2:16-cr-00018-WTL-CMM** |
| | : | |
| **ANDREW N. ROGERS,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION FOR A PROTECTIVE ORDER (DEPOSITIONS) (Doc. 294)

The United States of America ("the government"), through undersigned counsel, files its reply to defendant's response in opposition to the government's motion for a protective order pertaining to the transcripts and audio/video recordings of the depositions taken in this cause. (Doc. 294.)  The government states as follows:

Though not relevant to the question of whether or not the Court should grant the government's request for a protective order, the defendant nonetheless begins his response by reiterating his allegations of government misconduct.  This is of little, if any, help since the parties are in the midst of completing discovery concerning the allegations of government misconduct so that the parties can fully and completely litigate that issue before the Court, with full facts.

Defendant erroneously implies that the list of considerations for the granting of a protective order set forth in the advisory committee's note to Fed.R.Crim.P. 16 is exhaustive or exclusive and argues that the government's motion should be denied because it is not predicated on one of the listed considerations.  (*Rogers' Response In Opposition to the Government's Motion for Protective*

*Order (Depositions)* at 7 (Doc. 295.).)[1] But the pertinent note specifically states that "[a]*mong* the considerations to be taken into account will be . . . ." Fed.R.Crim.P. 16 advisory committee's note to 1966 amendment, subdivision (e) (emphasis added). "Among" indicates the list of considerations is neither exclusive nor exhaustive, and the note does not preclude the granting of the proposed protective order for other considerations, such as to preclude use of the depositions for purposes unintended by this Court.

Defendant's assertion that a protective order can only be issued if this Court first "determine[s] that the deposition testimony 'in fact contain[s] confidential information,'" is legally incorrect. (*Rogers' Response* at 4 (quoting *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 859 (7th Cir. 1994).) *Jepson* was a civil case in which the court addressed the issuance of a protective order pursuant to Fed.R.Civ.P. 26(c)(7) to protect confidential research. The protective order sought in this criminal case does not involve any research.

Defendant's claim that the "expansive protective order" sought by the government will prevent the defense from "provid[ing] a copy of the depositions to investigators or experts or confer[ing] with outside counsel, including Capital Resource Counsel," is not accurate. (*Rogers' Response* at 2.) In fact, the government's proposed protective order specifically permits such use: "Copies of the [deposition] transcripts and audio/video recordings shall be used solely and exclusively in connection with this case (including investigation, trial preparation, trial, and appeal . . . .") (*Proposed Protective Order* at 2, para. a) (Doc. 295-1).)

Defendant claims the government's reliance on objections made during the course of the depositions is not well founded because objections as to privilege were not answered by the witnesses. (*Rogers' Response* at 5-6.) However, at various times objections were made on

---

[1] Hereinafter "*Rogers' Response.*"

grounds other than privilege, such as relevance, speculation, lack of foundation, or outside the scope of the deposition.   Three of the four witnesses deposed are current federal employees who had reason to listen when counsel instructed them not to answer due to privilege objections. However, in the case of Ms. Haines, no longer a federal employee, privileged information may have been revealed despite government counsel's objections.   Thus, defendant's focus on the privilege objections alone is misplaced.

Defendant also argues that there is no personnel-related information in the deposition transcripts, and then proceeds to set forth some of the personnel information referenced with respect to Haines. (*Rogers' Response* at 6.)  Yet, this type of information is exactly the type which should not be disseminated to the public.  "[T]here is a 'substantial interest' in ensuring that the discovery process is not 'abused' such that its causes 'damage to reputation.'"  *Gomez v. City of Chicago*, No. 16 C 7743, 2017 WL 5517254, at *3 (N.D. Ill. Nov. 17, 2017) (*quoting Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984)).   Further, "[p]ublication of misconduct claims and discipline would certainly damage [an officer's] reputation (*especially with respect to the two complaints that were not sustained*)."  *Lane v. Salgado*, No. 13 C 3764, 2014 WL 889306, at *1 (N.D. Ill. Mar. 5, 2014) (emphasis added).   Moreover, "*regardless* of whether the requested documents contain information that is strictly confidential, 'given the extensive intrusion into the affairs of both litigants and third parties' that is both permissible and common in modern discovery, . . . the rules provide for the use of protective orders . . ."  *Wrice v. Burge*, No. 14C5934,  2016 WL 6962838 at *10 (N.D. Ill. Nov. 29, 2016) (quoting *Bond v. Utreras*, 585 F.3d 1061, 1067 (7th Cir. 2009) (quoting *Seattle Times*, 467 U.S. at 30)) (emphasis added; internal quotation marks omitted). If this were the government's only concern, perhaps redaction would suffice, but as described in

the government's initial motion, there are several issues throughout the depositions which support a requested protective order.

Moreover, by focusing on the alleged "sweeping" and "expansive" scope of the proposed protective order for the "*entirety*" of the four depositions, even defendant acknowledges that some type of protective order is appropriate. (*Rogers' Response* at 2-4 and 6) (emphasis in original).

Finally, defendant's repeated assertions that the proposed protective order is contrary to the "public interest" that the depositions be subject to "public scrutiny," indicate that defendant's motive in seeking to limit the protective order may be for purposes other than use of the depositions in connection with this case as intended by this Court. (*Entry On Motion To Reconsider Court's Order Permitting The Taking Of Depositions* at 2 (Doc 243).)  Furthermore, the defendant has already recognized the non-public nature of the deposition transcripts by moving to maintain the deposition transcripts under seal.  *See, e.g.*, Dkt. No 274 (moving for sealing of deposition transcripts because "[t]he documents contain information not for public review."); Dkt. No. 290 (same); Dkt. No. 298 (same).

Conclusion

Wherefore, for the reasons set forth in its motion, the government respectfully requests that

this Court issue the proposed protective order.

Respectfully submitted

JOSH J. MINKLER
UNITED STATES ATTORNEY


By:    s/William L. McCoskey
William L. McCoskey
Assistant United States Attorney

By:    s/ Abhishek Kambli
Abhishek Kambli

Assistant United States Attorney

5

<u>CERTIFICATE OF SERVICE</u>

I further certify that on March 1, 2019, a copy of the foregoing Government's Reply To Defendant's Response In Opposition To The Government's Motion For A Protective Order (Depositions) (Doc. 294) was filed electronically.  Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

By:   <u>s/ William L. McCoskey</u>
William L. McCoskey
Assistant United States Attorney
Office of the United States Attorney
10 W. Market St., Suite 2100
Indianapolis, Indiana 46204-3048
Telephone: (317) 226-6333
Email: William.mccoskey@usdoj.gov

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### TERRE HAUTE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Cause No. 2:16-cr-18-WTL-CMM-1** |
| | ) | |
| **ANDREW N. ROGERS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ENTRY SETTING HEARING

After reviewing the parties' relevant submissions, the Court has determined that Defendant Andrew Rogers' Motion to Strike the Notice of Intent to Seek the Death Penalty (Doc. 13) for the Government's Intentional Withholding and Destruction of Brady Information (Dkt. No. 92) cannot be resolved without an evidentiary hearing. In this motion and supplements to this motion, Rogers has raised serious allegations of misconduct on the part of various Government attorneys. The purpose of the hearing will be to permit the Court to assess the credibility of the relevant individuals and to seek clarification of certain issues raised by the parties' submissions.

This cause is set for a hearing on May 6, 2019, at 9:00 a.m, in Courtroom 202, United States Courthouse, 46 E. Ohio St., Indianapolis, Indiana. The Court has set aside three days on its calendar for the hearing.

The Court sets the following deadlines in advance of the hearing:

- Rogers shall file his witness and exhibit lists by **March 19, 2019**.

- The Government shall file its witness and exhibit lists by **March 26, 2019**.

If either party objects to any of the witnesses or exhibits listed by the opposing party, written objections supported by legal authority shall be filed no later than **7 days** after the opposing party's submission.

SO ORDERED: 3/6/2019

Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Distribution to all registered counsel by electronic notification via CM/ECF

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### TERRE HAUTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )     **Cause No. 2:16-cr-18-WTL-CMM-1** |
| | ) |
| **ANDREW N. ROGERS,** | ) |
| | ) |
| **Defendant.** | ) |

## ENTRY ON GOVERNMENT'S MOTION FOR SECOND EXTENSION OF TIME

This cause is before the Court on the Government's Motion for Second Extension of Time (Dkt. No. 304). Counsel for Andrew Rogers has informed the Court that it does not take a position on this motion. The Court **GRANTS** the Government's motion. The Government shall comply with the Court's December 18, 2018, Order (Dkt. No. 250) as to Items 187, 191, 195, and 206, by no later than **April 1, 2019**.

SO ORDERED: 3/12/2019

_William T. Lawrence_

Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Distribution to all registered counsel by electronic notification via CM/ECF