UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. H-13-363 |
| | ) | |
| JAMES WAYNE HAM | ) | |

**REPLY TO GOVERNMENT'S RESPONSE
TO DISCOVERY ORDER REGARDING THE BLUE BOOK**

On June 24, 2019, this Court ordered the government to furnish several items requested by the defendant in his Motion for Discovery (Docket No. 129, items 18-20), including a complete copy of the Department of Justice's "Blue Book," for *in camera* review. *See* Discovery Order, Doc. 138. The Court's order came after full briefing and a hearing. On August 9, 2019, the government filed, under seal, a response stating it was producing the Blue Book for *in camera* inspection but reasserting the objections and claims of privilege previously stated in its initial opposition to discovery.[1] Doc. 158. In addition, the government included a citation to *In re United States of America*, 397 F.3d 274 (5th Cir. 2005), attached a declaration dated June of 2014, from a different case, and requested another hearing if the Court is inclined to order production.

The government's objections are without merit. The defendant has already explained the general bases for his discovery requests and the Court has already ordered production of the Blue Book to the Court in chambers. *See* Doc. 129, 131 and 134. While there is no need to rehash

---

[1] It is unclear why the government filed this response under seal. The response does not contain any confidential or sensitive information. It simply indicates that the government does not want the defendant to have access to the Blue Book.

1

the original arguments, this reply provides additional facts and argument specific to the Blue Book.

## I. THE BLUE BOOK WAS CREATED IN RESPONSE TO MISCONDUCT BY DOJ.

The Department of Justice created the "Federal Criminal Discovery Blue Book" in response to public furor over its flawed prosecution of the late Alaska Senator Ted Stevens, whose conviction was vacated after post-trial investigation revealed that prosecutors had committed multiple discovery violations at his trial. Following a lengthy investigation, court-appointed Special Counsel, Henry Schuelke, concluded that "[t]he investigation and prosecution of U.S. Senator Ted Stevens were permeated by the *systematic concealment* of significant exculpatory evidence which would have independently corroborated Senator Stevens' defense and his testimony, and seriously damaged the testimony and credibility of the government's key witness." *See* Exhibit 1, Scheulke Report at 1 (emphasis added).[2] Scheulke determined that: (1) misconduct was intentionally committed by multiple prosecutors operating within DOJ; (2) it occurred despite prosecutors' multiple assurances to the court that they understood and had complied with their disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny; and, (3) the misconduct extended beyond Senator Stevens' case and required the reversal of two additional convictions where similar discovery violations occurred. Scheulke Report at 1 and 28-29; *see also, United States v. Kohring,* 637 F.3d 895 (9th Cir. 2011); *United States v. Kott*, 423 Fed. Appx. 736 (9th Cir. 2011).

---

[2] Defendant has attached only the Executive Summary portion of Special Counsel's report. The full report is over 500 pages long, and is available on the docket at *In re Special Proceedings*, No. 09-0918 (EGS) (D.D.C. Mar. 15, 2012), Docket No. 84.

2

Public disclosure of the widespread discovery abuses that marred the *Stevens* prosecution sparked a national outcry. Dozens of major news outlets followed the story and issued calls for reform. Congress proposed new legislation to standardize DOJ's interpretation of its constitutional discovery obligations, ensure timely disclosure of *Brady* information to criminal defendants, and establish consequences for future violations. DOJ strongly objected and asserted that federal legislation was unnecessary because it had instituted internal reforms, including the creation of a "Federal Criminal Discovery Blue Book – which comprehensively covers the law, policy, and practice of prosecutors' disclosure obligations." Exhibit 2, DOJ Statement for the Record: Hearing on the Prosecution of Former Senator Ted Stevens, at 4 (hereafter, "DOJ Statement"). The government claimed, "true improvements to discovery practices will come from prosecutors and agents having a full appreciation of their responsibilities under their existing obligations, rather than by expanding those obligations." *Id*. at 1. To that end, DOJ stated that the Blue Book had been "distributed to prosecutors nationwide in 2011" and "is now electronically available on the desktop of every federal prosecutor and paralegal." *Id*. at 4. According to DOJ, the Blue Book is an important tool designed to ensure that prosecutors "recognize fully their obligations under the[] [discovery] rules" and "apply them fairly and uniformly" in every case. *Id*. at 7.

In the end, Congress failed to pass new legislation to prevent future prosecutorial discovery abuse by DOJ. The government now asserts that the internal policy measures it adopted in an effort to prevent legislative reform (i.e., the Blue Book) should be shielded from public view. The DOJ argues that the Blue Book is filled with strategy and tactical advice about when and how discovery should be produced, while at the same time claiming that the Blue

3

Book promotes uniformity across cases. It is difficult to reconcile the government's statements in Doc. 159-1, at 6: "A prosecutor may be able to take a broad approach to discovery in one case, yet may seek to delay or limit disclosure in another case with different facts and circumstances. If defense counsel were aware of the myriad legal, strategic, and tactical considerations that go into this analysis, they would have unfair – and potentially dangerous – insight into the prosecution's approach to discovery in criminal cases," with DOJ's statement for the record, above: "The rules of discovery do not need to be changed. Rather, prosecutors and other law enforcement officials need to recognize fully their obligations under these rules, must apply them fairly and uniformly, and must be given tools to meet their discovery obligations rigorously." Exhibit 2, at 7.

## II. NO PRIVILEGE APPLIES TO THE BLUE BOOK.

The defendant has alerted this Court to allegations of prosecutorial misconduct (including *Brady* violations) committed by two DOJ prosecutors – James Peterson and Steven Mellin – in two separate capital trials. Both Peterson and Mellin have been or are currently involved in prosecuting this case. The defendant has requested discovery related to Peterson and Mellin specifically, their roles in the case, and their likely understanding of their discovery obligations, including DOJ policy materials such as the Blue Book. The government invokes the attorney-client, work-product and deliberative-process privileges and relies on a number of cases that are largely inapposite.[3]

The attorney-client privilege does not shield the Blue Book from disclosure because the

---

[3] For example, *In re United States*, which the government cited in its response, holds that a district court judge abused her discretion by ordering wide-ranging discovery about the government's capital charging practices after the defendant vaguely pled a selective prosecution

4

Blue Book does not contain confidential communications between an attorney and client relating to a legal matter for which the client has sought professional advice. *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997); *see also*, *Fisher v. United States*, 425 U.S. 391, 403 (1976) (the attorney-client privilege protects "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance"). The attorney-client privilege is narrowly construed and "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher,* 425 U.S. at 403. By the DOJ's own description, the Blue Book does not contain private information. Rather, it contains the policies and procedures DOJ has implemented to ensure that exculpatory evidence is properly disclosed to the defense in compliance with *Brady*, *Giglio*, the Jencks Act and Rule 16. Exhibit 1, DOJ Statement, at 3.

Likewise, the Blue Book is not protected from disclosure under the deliberative-process privilege because it reflects DOJ's settled policies and legal interpretations rather than its pre-decisional "recommendations and deliberations." *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). The deliberative process privilege covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and polices are formulated." *Id*. (internal quotation omitted). The purpose of the privilege "rests on the obvious realization that [agency] officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Department of Interior v. Klamath Water Users Protective Ass'n*, 532

---

claim, and then sanctioning the government by crafting a proposed instruction informing the jury that the government had refused to obey her lawful discovery order. 397 F.3d 274 (2005). Here, the defendant has raised a specific claim of governmental misconduct regarding the government's *Brady* obligations in capital cases, and the discovery requests do not relate in any way to the actions by the district court in *In re United States*.

U.S. 1, 8-9 (2001).   The law draws a sharp distinction between "predecisional communications, which are privileged, . . . and communications made after the decision and designed to explain it, which are not."   *Nat'l Labor Relations Bd.*, 421 U.S. at 150 (internal citations omitted).   As the Supreme Court has explained:

> [t]his distinction is supported not only by the lesser injury to the decisionmaking process flowing from disclosure of post-decisional communications, but also, in the case of those communications which explain the decision, by the increased public interest in knowing the basis for agency policy already adopted.

*Id*.   There is great public interest in information that sheds light on the integrity of government actions.   Courts have "repeatedly recognized a public interest in the manner in which the DOJ carries out substantive law enforcement policy."   *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1093 (D.C. Cir. 2014); *see also*, *In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997) ("[W]here there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government." (quotation marks omitted)).   Moreover, "[t]he [deliberative process privilege], once determined to be applicable, is not absolute," *Redland Soccer Club, Inc. v. Department of the Army*, 55 F.3d 827, 854 (3d Cir. 1995), and it does not "protect Government secrecy pure and simple."   *Klamath Water Users Proective Ass'n*, 532 U.S. at 8.

DOJ has not described the Blue Book as containing information about pre-decisional agency debate.   On the contrary, DOJ represented to Congress that no additional legislation or external policy reform was necessary because the problems evidenced by the *Stevens* trial had

been effectively and decisively "handled" by dissemination of the Blue Book. The government described the Blue Book as a litigation manual containing a "comprehensive" statement of the agency's view on "the law, policy, and practice of prosecutors' discovery obligations." Exhibit 2, DOJ Statement at 4. DOJ represented that the Blue Book would ensure consistent, fair and uniformly applied application of the discovery rules by prosecutors who would now have "a full appreciation of their responsibilities under their existing obligations." *Id*. at 1. The DOJ's description does not even remotely suggest a document containing frank pre-decisional debate, which should be shielded from public view until it is ultimately decided.

Finally, the attorney work-product privilege does not guard the Blue Book from disclosure because the Blue Book does not constitute "material[] prepared by an attorney 'acting for his client in anticipation of litigation.'" *United States v. Nobles*, 422 U.S. 225, 237-38 (1975), quoting *Hickman v. Taylor*, 329 U.S. 495, 508 (1947). The work-product doctrine can apply when litigation is imminent, or when "the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981). The fact that prosecutors' discovery obligations take place in the context of litigation in every case is too general a notion, and would result in an overbroad application of protection, just as all "papers generated by an attorney who prepares a tax return are not within the work product privilege simply because there is always a possibility [of litigation if] the IRS might challenge a given return." *Id*. It is plain from the Blue Book's history and DOJ's public statements about its purpose that the primary motivation behind the Blue Book's creation was to defeat Congressional reform through the internal adoption of a general policy manual.

The defendant acknowledges that the United States Court of Appeals for the D.C. Circuit

7

has found parts of the Blue Book protected from disclosure under the Freedom of Information Act as attorney work-product. *National Association of Criminal Defense Lawyers v. Department of Justice*, 844 F.3d 246 (2016). However, this opinion is not binding on this Court, and it is important to note that the D.C. Circuit's decision included a remand for further review regarding which portions of the Blue Book were nonetheless subject to disclosure as "reasonably segregable" non-exempt statements of policy. More importantly, the FOIA disclosure regime is distinct from civil and criminal discovery. "Different considerations determine the outcome of efforts to obtain disclosure: relevance, need, and applicable privileges" within the different regimes. *Stonehill v. IRS*, 558 F.3d 534, 538 (D.C. Cir. 2009). While information disclosed under the FOIA must be made available to the public in general, information disclosed during criminal discovery is limited to the parties and can be made subject to protective orders if necessary. Indeed, the government's own declaration states that the Blue Book has previously been ordered disclosed to a criminal defendant along with a protective order preventing its dissemination "outside the defense team." Doc. 158-1.

Finally, even if the Blue Book is privileged (which, for the reasons discussed above, it is not) that does not end the inquiry because balanced against the government's desire to shield privileged information is the litigant's interest in "free and open discovery." *FDIC v. Hatziyannis*, 180 F.R.D. 292, 293 (D. Md. 1998). Even if material is privileged, the party seeking it through discovery may defeat the privilege claim by showing that the party's need for information outweighs the agency's interest in confidentiality. *See, e.g., Nat'l Labor Relations Bd.*, 421 U.S. at 149, n.16 ("The ability of a private litigant to override a privilege claim set up by the Government, with respect to an otherwise disclosable document, may itself turn on the

8

extent of the litigant's need in the context of the facts of his particular case; or on the nature of the case."). In this case, the defendant has made a strong showing of need. He has notified the Court that two prosecutors involved in his case have been accused of committing *Brady* violations in other capital trials *and* that the government recently settled *United States v. Rogers* rather than allow the specifics of these allegations to be made public.

The government used the development of the Blue Book to shield itself from public scrutiny (and Congressional reform) following its own egregious misconduct in the *Senator Stevens* case. They now seek, yet again, to hide behind multiple layers of asserted privileges, rather than publicly disclose the contents of the Blue Book, while simultaneously arguing that the defendant's requests for discovery should be denied because he has no evidence of specific discovery abuses in his particular case. The government cannot claim that the Blue Book contains strategy discussions or privileged communications unique to this case, as it was drafted before this case ever came into existence.

## CONCLUSION

For the foregoing reasons, the defendant respectfully requests that this Court release to defendant's counsel all or portions of the Blue Book, as the Court deems appropriate, following the Court's *in camera* review.

Respectfully submitted, this the 16th day of August, 2019.

*/s/ Kimberly C. Stevens*
Kimberly C. Stevens
Capital Resource Counsel
Assistant Federal Public Defender
1070-1 Tunnel Road, STE 10-215
Asheville, NC 28805
(336) 575-4337 – cell
(336) 788-3779 – voicemail

(336) 788-3836 – facsimile
North Carolina State Bar No. 20156

*/s/ Anthony S. Haughton*
Anthony S. Haughton
Capital Resource Counsel
Assistant Federal Public Defender
C/O SD Federal Public Defender
Lyric Centre,
440 Louisiana, Suite 1350
Houston, TX 77004-1669
(832) 287-9548 cell
(713) 718-4610 fax
Texas Bar No. 09234150

COUNSEL FOR JAMES WAYNE HAM

CERTIFICATE OF SERVICE

This is to certify that on the 16th day of August, 2019, a copy of the foregoing was served on counsel for the United States by electronic transmission.

*/s/ Kimberly C. Stevens*
Kimberly C. Stevens
Capital Resource Counsel
Assistant Federal Public Defender
1070-1 Tunnel Road, STE 10-215
Asheville, NC 28805
(336) 575-4337 – cell
(336) 788-3779 – voicemail
(336) 788-3836 – facsimile
North Carolina State Bar No. 20156