UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. H-13-363 |
| | ) | |
| | ) | |
| JAMES WAYNE HAM | ) | |

**MOTION FOR SANCTIONS AND OTHER APPROPRIATE RELIEF
AGAINST DOJ AND DOJ ATTORNEY JAMES D. PETERSON FOR FAILURE TO
SELF-REPORT HIS VIRGINIA STATE BAR REPRIMAND AND JUDICIAL
FINDINGS OF *BRADY* VIOLATIONS TO THIS COURT**

In February of 2020, attorney Kimberly C. Stevens was contacted by a witness in Virginia who had seen the Houston Chronicle article covering this Court's June 19, 2019 hearing in this case. Exhibit 10. Because that witness came forward, we have learned: On March 12, 2014, the Virginia State Bar issued a private reprimand against James Dennis Peterson for committing *Brady* violations while prosecuting a criminal case in Stafford, Virginia. Exhibits 1, 2, 3 and 4.

On June 19, 2019, this Court required the Government to produce to the defendant and this Court: "You know, the notes of the discussion about the use of the perjured testimony could have been argued to have been attorney/client privilege except committing a crime is not covered; **and while not all violations of bar rules and ethics are crimes, we need to see those**." Transcript, at 34 (emphasis added). The Court continued: "Well, let's get this, what we've discussed today; and I will do a written order on a couple of those things, but what I said here is binding." Transcript, at 45.

1

On June 24, 2019, this Court further ordered the Government to answer, among other things: "3. By July 12, 2019, the government must file a statement about whether there are complaints by the Capital Case Section attorney in this case." Doc. 138, Paragraph 3. In response, the Government answered: "The Government contacted Richard Burns, Acting Chief of the Capital Case Section, regarding whether there were any complaints against Capital Case Section Attorney, James Peterson. According to Richard Burns, other than the complaints made by Amanda Haines, about which this Court is aware, there have been **no complaints** against James Peterson during his tenure with the Department of Justice." Doc. 142 at 1 (emphasis added).[1]  Mr. Peterson failed to properly answer the Court's question.

In Document 131, filed on April 12, 2019, the defense noted that the Court has a Pro Hac Vice form which applies to out-of-state private attorneys seeking to practice in the Southern District of Texas: "Being a government attorney, Mr. Peterson did not fill this out (or if he did, he did not file the form in this case). The Pro Hac Vice Form asks the following question of private attorneys: '**has applicant been sanctioned by any bar association or court?** Yes__ No __. On a separate sheet for each sanction, please supply the full particulars.'" Document 131, at 3, fn1 (emphasis added). That form was filed as Document 131, Exhibit 7.

Mr. Peterson was on notice that the issue of whether he had ever been sanctioned by any bar association or court was a relevant issue in the June 19, 2019 hearing. Yet, Mr. Peterson sat through the entire hearing and disclosed nothing. "Peterson, seated with fellow counsel, looked flushed and shook his head. He never addressed the judge nor did he look up from the table during the scolding." Exhibit 10 at 3. Mr. Peterson did not report his Virginia State Bar

---

[1] Similarly, in Document 144, in response to this Court's Order, the Government issued this blanket statement: "There has been no destruction or withholding of Brady information in the case of *United States v. James Wayne Ham*. Additionally, there has been no discovery failures. All discovery items, in the possession of the United States have been produced to the Defense." Document 144, at 5. This issue will be addressed further below.

reprimand to this Court during the hearing. He could have asked to approach the bench in order to inform the Court of this matter. He could have disclosed the matter in open court. Instead, he said nothing. Mr. Peterson has not corrected the record or reported his reprimand since this Court's Order in July of 2019. Instead, because of the private nature of the reprimand, the defense had to discover the reprimand from external sources. It is notable that since our last hearing, and as of July 12, 2019 when undersigned counsel checked the Texas State Bar website, Mr. Peterson has surrendered his Texas Bar license completely.

When this Court said that all violations of bar rules and ethics should be disclosed, the Court was clear. Mr. Peterson had the opportunity right then to inform the court of his Virginia State Bar reprimand.

Mr. Peterson was reportedly hired by the DOJ in 2012. Exhibit 5. On March 12, 2014, the Sixth District Subcommittee of the Virginia State Bar issued a private reprimand to James Dennis Peterson for his role in the prosecution of Antonio C. Navarro-Covert. Exhibit 1. We understand that the reprimand was for Mr. Peterson's *Brady* violations committed in the trial of that defendant's assault case. Exhibit 3, Paragraph 8. A Circuit Court Judge in the County of Stafford, Virginia, who presided over the original trial, found that Mr. Peterson violated *Brady* by failing to turn over exculpatory witness statements, and granted that defendant a new trial. The judicial findings of the *Brady* violations in that case will be discussed further below. Exhibit 2. The family of the defendant in the Navarro case then filed a Bar grievance, and the Virginia State Bar issued a reprimand during Mr. Peterson's tenure with the DOJ.

Moreover, this Court ordered the Government to give Mr. Ham, by July 22, 2019, "all documents relating to the government's withholding and destruction of Brady information or discovery failures in this case." Document 138, Paragraph 5. In response, the Government

claims that *Brady* has not been violated in this case, nor have there been any discovery failures, and that "[a]ll discovery items, in the possession of the United States have been produced to the defense." Doc. 114 at 5.

As this Court noted previously: "And the point of the Rogers case was not that the facts of that case in terms of the offense are relevant, but that the government process is tainted by character that doesn't change from case to case. The lawyers in Ohio or wherever it was that tried [Senator Ted] Stevens had probably done the same thing in thousands of cases. Just an honest FBI agent in those cases didn't go to the Judge." 6/19/19 Pre-Trial Hearing Transcript at 25. Further: "Donald Rumsfeld said, the problem's not what we know we don't know, it's what we don't know we don't know." *Id*. at 28.

Given Mr. Peterson's failure to disclose his Virginia State Bar reprimand to this Court, his administrative suspension of his Texas Bar license, and his conduct attested to by co-worker Amanda Haines in the *Rogers* case (covered at length in Document 129), the only way to assess the accuracy of the Government's assurances that *Brady* has been complied with is for the defense to be provided with Mr. Peterson's entire file and compare it with those statements.

    **I.**    **Mr. Peterson's *Brady* Violation in *Commonwealth of Virginia v. Antonio Navarro-Covert***

In the year preceding his employment with the Department of Justice, while serving as an Assistant Commonwealth's Attorney in Stafford, Virginia, James Dennis Peterson prosecuted a young man named Antonio Navarro-Covert. On November 9, 2011, Mr. Navarro-Covert was convicted by a jury and sentenced to more than six years for an alleged assault on Nick Goss.

Prior to trial, the victim of the crime, Nick Goss, described his assailant to law enforcement as a dark-skinned black male. Navarro-Covert is a light skinned white and Hispanic male. Exhibit 6. Mr. Peterson did not turn that statement over to the defense before trial. Mr.

4

Peterson obtained the conviction without calling victim Goss as a witness. After trial, Goss signed an affidavit saying Navarro-Covert was not his assailant, and he was sorry that the wrong person had been convicted. Exhibit 6.

Further, Mr. Peterson did not turn over a pre-trial statement by a witness named Shannon Jackson. Her pre-trial statement indicated that she was outside when the melee occurred, and she did not mention seeing Navarro-Covert assault anybody. In another document, Jackson reportedly said to another person that Mr. Peterson pressured her into providing false testimony, and to have her testimony "mirror" the others. Exhibit 7. Neither did Mr. Peterson turn these documents over to the defense prior to trial.

After filing a motion alleging that Mr. Peterson did not produce exculpatory *Brady* evidence before or during trial, Navarro-Covert's conviction was set aside. On May 2, 2012, the trial judge granted the motion for new trial, holding:

> The burden is on the Commonwealth to produce *Brady* evidence, it's not up to defense counsel to know about statements and ask for them, and then cause the Commonwealth to go looking for statements and give them. It's up to the Commonwealth to know what the statements are and to give them, that's the focus of Brady and the progeny. And defense counsel is entitled to a full arsenal of potentially exculpatory evidence before the trial so that he can develop his trial strategy, and his cross examination, and calling of witnesses based on full knowledge of what the evidence is that has been given to agents of the Commonwealth before the trial.
>
> The Commonwealth's position in this case seems to be, well, maybe he didn't assault Goss, but he assaulted somebody, and other people assaulted somebody anyway, so it really doesn't make any difference, he is guilty. And I just don't think that's true in this case. I heard the evidence in the trial, obviously, and I was convinced this defendant pushed Nick Goss off the wall, and that that started the fight, and I suspect the jury was convinced of that. Would it have made a difference if they had known that he wasn't the person, or had evidence from which they could find that he wasn't the person, I think that's a reasonable probability that it would have made a difference to them.

Exhibit 2 at 3-4 (Transcript pages 41-42). Subsequently, the defendant and his family presented evidence of the *Brady* violation to the Virginia State Bar, and on March 12, 2014, Mr. Peterson was reprimanded. Exhibits 1, 3.

## II. Mr. Peterson's Lack of Disclosure Regarding His Texas and Virginia Bar Licenses and Reprimand

Mr. Ham filed a Motion for Discovery on March 26, 2019, in which he noted that a search for Mr. Peterson's Texas bar license status showed that he was ineligible to practice law in the State of Texas due to administrative suspension of his license. Doc. 129 at 3. The government responded that he was formerly licensed in Texas, after a period of years abandoned his Texas bar license, and that the printout Mr. Ham cited to reflected "abandonment not discipline." Doc. 130 at 7. Mr. Ham replied that the Texas State Bar informed undersigned counsel that the bar administratively suspends someone's license if they fail to pay their bar dues, and therefore Mr. Peterson did not properly "abandon" his Texas State Bar license. Mr. Ham further explained that the Texas Disciplinary Rules of Professional Conduct note that a lawyer shall not "engage in the practice of law when the lawyer is on inactive status [including] where a lawyer's right to practice has been administratively suspended for failure to timely pay required fees or assessments…" Doc. 149 at 7 n. 2; TX Disciplinary Rule of Professional Conduct 8.04. The government replied that "at all times during these proceedings James Peterson was a licensed attorney in good standing with the Virginia State bar as required." Doc. 157 at 1.

Additionally, in a footnote in Mr. Ham's reply regarding the discovery motion, Mr. Ham referenced this Court's Pro Hac Vice form, noting that, had Mr. Peterson been a private attorney, he would have had to self-report any bar disciplinary infractions. Document 131, at 3, n1, Exhibit 7 thereto. Neither the government nor Mr. Peterson addressed this statement in

6

subsequent pleadings. In oral argument on June 19, 2019, Mr. Peterson's Texas bar license status was discussed, including the argument made by the government that Mr. Peterson held a valid Virginia license. And while his license may technically be valid, that does not excuse Mr. Peterson's failure to report the disciplinary sanction imposed by the Virginia State Bar. This Court, and the Texas State Bar, have the right to depend upon attorneys to accurately self-report out-of-state disciplinary infractions.

Mr. Peterson, who was present in court, remained silent, again failing to notify the Court about the disciplinary action taken by the Virginia State Bar. Not only did Mr. Peterson remain silent about the reprimand, but in a reply regarding the discovery motion, the government stated that he was "in good standing with the Virginia state bar" "at all times during these proceedings." Doc. 157 at 1.

The only way that defense counsel – and now this Court – have been made aware of the *Brady* violation for which Mr. Peterson was reprimanded in Virginia was by a third-party coming forward.[2] Mr. Peterson has been involved with this case since February of 2015. Doc. 144, at 1. His narrative, at document 144, is wholly insufficient to describe his activities in this case. *See* Doc. 149 for the Defendant's Objections to the Government's Narrative Response to Items 1, 2 and 5. Mr. Peterson neglects to identify exculpatory information that had to have been learned in his prison interviews; he does not inform the Court of his conversations with James Ham's evaluating psychologist, Maureen Reardon. The only way that we have learned of

---

[2] Note that Texas Rule of Disciplinary Procedure 15.08(5)(c) states "A private reprimand should not be utilized when a Respondent has engaged in misconduct involving the failure of a prosecutor to make timely disclosure to the defense all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigate the offense." Thus, it appears that, had this reprimand occurred in Texas, it would have been public. And, Mr. Peterson had an obligation to report his Virginia State Bar disciplinary infraction to the Texas Bar of which he was also a member (albeit a member on administrative suspension). Texas Disciplinary Rule of Professional Conduct 8.03(f).

the suspension of his Texas Bar license, or his Virginia State Bar reprimand, is that the defense discovered them. Similarly, the only way that Mr. Peterson's misconduct in *United States v. Rogers* was discovered was because Amanda Haines was assigned the case after Mr. Peterson had worked on it, and she inherited his file.   Doc. 129, Exhibit 1, Haines Declaration, Paragraphs 9-11.

In looking at the timeline of events related to Mr. Peterson's involvement in the *Navarro-Covert* case, the *Rogers* case, and now Mr. Ham's case, they all occurred within relatively quick succession.  Mr. Peterson tried the Navarro case in November of 2011; he was hired by the DOJ in 2012 (*see* Exhibit 5); the Virginia State Bar decision was in March 2014 (*see* Exhibit 1); Mr. Peterson was assigned to the *Rogers* case in September 2014; and assigned to Mr. Ham's case in February of 2015 (*see* Doc. 144 at 1).  The close proximity of Mr. Ham's case with the Virginia reprimand, and with his work on the *Rogers* case, where there were serious allegations of misconduct, raise reasonable concerns about his conduct during the time frame relevant here, and his conduct during his years of handling Mr. Ham's case.   Further, he was faulted in *Rogers* for his conversations with mental health professionals, and a month later he was noted to be dropping off records in Mr. Ham's case for Dr. Maureen Reardon to review.  *See* Exhibit 9; 6/19/19 Pretrial Hearing Transcript at 18.  Despite this Court's directives, Mr. Peterson has not revealed or described any of his conversations with Dr. Reardon to the defense.  It is critical that Mr. Ham have a full understanding of the details of Mr. Peterson's work on Mr. Ham's case through the evidence contained in his file itself.

On June 24, 2019, this Court ordered the government to, among other things, "file a statement about whether there are complaints by the Capital Case Section attorney in this case." Doc. 138.  In response, the government stated that, other than the complaints made by Amanda

Haines in the *Rogers*, case, "there have been no complaints against James Peterson during his tenure with the Department of Justice." Doc. 142 at 1. Unless "complaint" can fairly be read *not* to include a Bar reprimand (which it cannot – especially given this Court's directive that all bar rule or ethics violations be provided), the Government's statement is inaccurate.

This Court further ordered the Government to draft a statement as to whether *Brady* has been violated here. The government says *Brady* has not been violated in this case, nor have there been any discovery failures, and that "[a]ll discovery items, in the possession of the United States have been produced to the defense." Doc. 114 at 5. We cannot simply accept Mr. Peterson's word for that – given his apparent lack of understanding of, or disregard for, the requirements of *Brady*. Only by review of the underlying documents – his file – can we learn whether exculpatory information on guilt or penalty exists in that file.

### III.  Discovery Requests regarding Mr. Peterson

In the government's Response to Court Order Items 1, 2, and 5, when asked to give a narrative of all Mr. Peterson's activity in Mr. Ham's case, the government states that Mr. Peterson "reached out to and arranged to retain" Mr. Ham's evaluating mental health doctor, Dr. Maureen Reardon. Doc. 144 at 2. His narrative, contrary to this Court's directives, says nothing about what was discussed with Dr. Reardon. His narrative also states that he was present "during pre-competency hearing interviews of prison staff." Doc. 144 at 3. Mr. Ham has not had a single infraction for a violent act while in custody. Those interviews, therefore, *must* contain exculpatory information regarding penalty phase; however, Mr. Peterson provided no detail from those interviews.

Defense counsel has also learned that a number of witnesses were brought to Houston and interviewed, or interviewed by the government and/or law enforcement at another location.

9

In the course of our investigation, we have identified nine witnesses who have told us that they were interviewed at length by the government, yet we have received no statements from the government summarizing those interviews. That is nine witnesses that we know about – we have no idea how many others exist. No information on these interviews has been provided by the government, and defense counsel does not know who was present during those interviews.

> Recall that in *Rogers*, DOJ Attorney Amanda Haines swore that Mr. Peterson had:
>
> committed a fundamental error in judgment and a violation of the 'Ogden Memo,' by interviewing over a dozen witnesses without a law enforcement agent or other witness being present. These witnesses were suspected of having information that was potentially harmful to the government's penalty phase case. Mr. Peterson compounded this error by destroying his interview notes, a fact he initially falsely denied, neglecting to memorialize his conversations with the witnesses, and failing to keep records of what documents he showed them to refresh their recollections or lack thereof.

Doc. 129, Exhibit 1, Paragraph 10. Here, the government stated in oral argument that anything that is not work product has been provided to the defense. 6/19/19 Pretrial Hearing Transcript at 24. Defense counsel has not, though, seen any documentation related to these interviews listed above, including who was present, what was said, and whether there is any *Brady* material included in those interviews.

Defense counsel needs Mr. Peterson's complete file to understand the scope of his interviews and his work on this matter. Without it, we cannot test the facts underlying his incomplete narrative and his blanket statement saying no *Brady* violations have occurred here. In Mr. Peterson's Opposition to the Motion to Set Aside Trial in *Navarro-Covert*, he clearly argues for an interpretation of *Brady* that is inaccurate, and that was rejected by the court hearing the motion. There, Mr. Peterson suggested that it was the defense's obligation to request specific statements made by the alleged victim, Nick Goss, or a witness, Shannon Jackson. Mr. Peterson admitted that "[t]he Commonwealth did not provide the defense counsel with Mr. Goss' written

10

or oral statement to law-enforcement or Shannon Jackson's statement… The defendant never requested to see any Nick Goss statements or other specific witness statements." Exhibit 8 at 2. He further claims that cases dealing with *Brady* don't find materiality when the statements are incomplete and do not exonerate the defendant, but are simply inconsistent with some of the evidence at trial. *Id*. at 4.  This is simply not the law, and the Court rejected Mr. Peterson's interpretation when granting a new trial.   Exhibit 2 at 3 (Transcript page 41).

Mr. Peterson's misguided interpretation of *Brady* lends all the more support for providing the DOJ's Blue Book to the defense in this case.  The defendant has demonstrated his need to review departmental policies as compared with Mr. Peterson's conduct in this Court.  Has Mr. Peterson been as cavalier with the application of *Brady* to the evidence in this capital case as he has with his Texas Bar License, his Virginia State Bar reprimand, the local rules of this Court, and his disregard for this Court's orders to produce evidence?

As mentioned above, Mr. Ham has reason to believe there have been witness interviews for which we have seen no reports or notes, and Mr. Peterson himself responded in his narrative that he spoke to Dr. Reardon and prison staff.  The responses regarding his role have thus far been incomplete and insufficient, and the defense now requests access to Mr. Peterson's complete file, and the DOJ's Blue Book governing the provision of discovery, as previously briefed in Document 160.

**IV.    Sanctions**

It is within this Court's authority to impose sanctions on the Government for violating the Local Rules for the Southern District of Texas and the Texas Disciplinary Rules of Professional Conduct.  In this case, when confronted regarding his apparent suspended Texas Bar license, Mr. Peterson – rather than apologize to this Court and correct the situation – represented to this Court

in a filed responsive document that his license was properly surrendered, when it was not. Rule 8.04 of the Texas Disciplinary Rules of Professional Conduct clearly states that a failure to pay dues is a violation of those rules, and there is no exception for "abandonment" of a license. He has now failed to disclose his Virginia State Bar Reprimand to this Court, upon this Court's request that he do so.

Federal courts enjoy the inherent power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630–31 (1962)). This power includes the ability to discipline attorneys, punish for contempt, control admission to its bar, and vacate judgments. *Id.* at 43–44. It is well established "that a district court always has jurisdiction to impose sanctions designed to enforce its own rules." *Fleming & Assocs. v. Newby & Tittle*, 529 F.3d 631,637–38 (5th Cir. 2008) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)).

The Fifth Circuit has explicitly held that there is no requirement to find bad-faith when imposing sanctions pursuant to a local rule of court. *In re Goode*, 821 F.3d 553, 559 (5th Cir. 2016) ("As we conclude that the district court was not required to make a finding of bad faith before sanctioning Goode under [the local rules], we turn to Goode's constitutional challenge"); *see also In re Hermesmeyer*, 688 F. App'x 300, 304 (5th Cir. 2017). Thus, without regard to Mr. Peterson's good or bad faith in allowing his Texas Bar license to be suspended, his conduct in signing pleadings in the United States District Court for the Southern District of Texas while ineligible to practice law in Texas warrants the sanctions sought here, including that the court strike all pleadings signed by James Peterson in this matter, including the superseding indictment, the amended Notice of Intent to Seek the Death Penalty, the second amended Notice of Intent to Seek the Death Penalty, and every pleading which bears his signature. Further, his

failure to report his Virginia State Bar reprimand, following an Order that he do so, is grounds for the sanctions sought below.

Finally, the defense has reason to wonder whether Mr. Peterson reported his Virginia State Bar reprimand to the Texas State Bar. He held a license in Texas (though on administrative suspension for failure to pay dues and, on information and belief, on inactive status) at the time of his Virginia State bar reprimand. The Texas State Bar required that Mr. Peterson self-report his Virginia State Bar reprimand. See Texas Disciplinary Rule of Professional Conduct 8.03(f) ("A lawyer who has been disciplined by the attorney-regulatory agency of another jurisdiction must notify the chief disciplinary counsel within 30 days of the date of the order or judgment. The notice must include a copy of the order or judgment"). And, in Texas, when a prosecutor violates *Brady*, the reprimand cannot be confidential. *See* Texas Rule of Disciplinary Procedure 15.08(5)(c) ("A private reprimand should not be utilized when a Respondent has engaged in misconduct involving the failure of a prosecutor to make timely disclosure to the defense all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigate the offense").

## CONCLUSION

Based on the argument presented above, Mr. Ham believes that the following sanctions are warranted, and respectfully requests that this Court:

1. Order the Department of Justice provide to the defense a copy of Mr. Peterson's entire file from this case;

2. Order the Department of Justice to produce Mr. Peterson's personnel file;

3. Order Mr. Peterson to produce to this Court the contents his entire private reprimand from the Virginia State Bar;

4. Order Mr. Peterson to answer whether he self-reported his Virginia reprimand to the Texas Bar at any time while serving as counsel for the government in this case;

5. Release the "Blue Book" to defense counsel;

6. Order Mr. Peterson and the Department of Justice to produce copies of his and Amanda Haines' complete depositions in *United States v Rogers*;

7. All items previously requested in Documents 129, 143, 149, and 160; and

8. Any and all such other relief as justice requires.

This being a motion for sanctions, the defense has not conferred with the government with respect to whether they consent to the filing of this motion.

Respectfully submitted, this the 5th day of March, 2020.

*/s/ Kimberly C. Stevens*
Kimberly C. Stevens
Capital Resource Counsel
Assistant Federal Public Defender
1070-1 Tunnel Road, STE 10-215
Asheville, NC 28805
(336) 575-4337 – cell
(336) 788-3779 – voicemail
(336) 788-3836 – fax
North Carolina State Bar No. 20156

*/s/ Anthony S. Haughton*
Anthony S. Haughton
Capital Resource Counsel
Assistant Federal Public Defender
C/O SD Federal Public Defender
Lyric Centre
440 Louisiana, Suite 1350
Houston, TX 77004-1669
(832) 287-9548 - cell
(713) 718-4610 - fax
Texas Bar No. 09234150

COUNSEL FOR JAMES WAYNE HAM

CERTIFICATE OF SERVICE

This is to certify that on the 5th day of March, 2020, a copy of the foregoing was served on counsel for the United States by electronic transmission.

>*/s/ Kimberly C. Stevens*
>Kimberly C. Stevens
>Capital Resource Counsel
>Assistant Federal Public Defender
>1070-1 Tunnel Road, Suite 10-215
>Asheville, NC 28805
>(336) 575-4337 – cell
>(336) 788-3779 – voicemail
>(336) 788-3836 – fax
>North Carolina State Bar No. 20156