UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. H-13-363 |
| | ) | |
| | ) | |
| JAMES WAYNE HAM | ) | |

**REPLY TO OPPOSITION TO THE DEFENDANT'S
MOTION FOR SANCTIONS**

1. In its 32 page defense of James Peterson and the DOJ, Doc. 178, the Government neglects to mention the Court's simple mandate of June 19, 2019: "while not all violations of bar rules and ethics are crimes, **we need to see those**." (6/19/19 Hearing Transcript at 34) (emphasis added). Or this: "someone who has a license from any other American jurisdiction could perhaps be admitted for this case alone, but it requires disclosure of whatever happened with the Texas license." (*Id.*, at 30). The Court continued: "Well, let's get this, what we've discussed today; and I will do a written order on a couple of those things, but what I said here is binding." (*Id.* at 45).

   *Introduction*

2. Mr. Peterson began working on Mr. Ham's case in early 2015. In 2016, when Mr. Peterson entered his out-of-state appearance in this case, he did not inform the Court of (1) his suspended Texas Bar license, or (2) his Virginia State Bar reprimand.

3. The defense independently discovered both, and notified the Court.

4. When the defense informed this Court of Mr. Peterson's suspended Texas Bar license, Mr. Peterson denied that it was suspended, and claimed, misleadingly, that he had properly abandoned his Texas license. Yet after this Court's June 19, 2019 hearing, Mr. Peterson voluntarily surrendered his Texas State Bar license.

5. It was only when the defense learned of Mr. Peterson's Virginia State Bar reprimand and notified this Court that Mr. Peterson and his DOJ superior, Acting Head of the Capital Crimes Unit Rich Burns, finally turned the reprimand over to this Court, *ex parte* and

1

under seal. Mr. Burns admits that he knew about the Virginia bar reprimand all along, but did not turn it over to this Court contending it was private. Doc. 178, at 10-11.

6. Furthermore, as demonstrated below, Mr. Peterson should have reported his out-of-state bar reprimand to the Texas State Bar. Yet his DOJ Superior, Mr. Burns, continues to insist that Mr. Peterson had properly "abandoned" his Texas State Bar license at the time of the Virginia bar reprimand in 2014, when he had not.

7. Knowing that Mr. Peterson had been reprimanded by the Virginia State Bar, Mr. Burns responded to this Court's ordered question that there had been "no complaints" against Mr. Peterson during his tenure with the DOJ. The DOJ contends that their definition of the word "complaint" does not include an out-of-state bar reprimand. Their answer was unqualified. They did not write: there are no "publicly available" complaints, for example. The Government chose to assert in response to this Court's directive that there were no complaints against Mr. Peterson during his tenure with the DOJ.

8. In its 32-page response, DOJ omits any discussion the underlying Virginia Commonwealth Circuit Court Judge's opinion holding that Mr. Peterson violated *Brady,* rejecting Mr. Peterson's reading and application of *Brady*, and ordering a new trial.

9. It is against this backdrop that the present motion for sanctions has been filed. We have little faith in the accuracy of Mr. Peterson's blanket assertion that he has complied with *Brady* in this case, and that all proper discovery has been turned over. We can see from Mr. Peterson's inadequate response to the narrative ordered by this Court that Mr. Peterson has interviewed witnesses and FDC Houston personnel in the case, and spoken with evaluating mental health care providers (at least one) of this defendant. That narrative provides no details of any of those interviews.

10. The Government's repeated recitation of the facts of the crime sheds no light on the issues surrounding their failure to disclose Court-ordered information about all of Mr. Peterson's violations of bar rules and ethics. Regardless of the facts of any given case, the Government has an obligation to obey orders of the Court or explain why they have a dilemma in doing so.

11. The Government's *Opposition to Motion for Sanctions* underscores the genuine concerns that Mr. Ham has about the DOJ's candor concerning Mr. Peterson's prior ethical issues and the DOJ attorney's appreciation of and ability to discharge his obligations under *Brady v. Maryland,* 373 U.S. 83 (1963).

*Pertinent Facts*

12. In early 2015, Mr. Peterson began working on the *Ham* case in the United States District Court, Southern District of Texas, Houston Division. Doc. 144 at 1. In 2016, he

obtained Southern District of Texas ECF filing privileges and entered his appearance in this case on the record. Doc. 87. Last week, he filed a letter saying he is withdrawing from this case. Doc. 182.

13. In approximately 1996, James Peterson let his Texas State Bar license lapse for failure to pay his required bar dues. Doc. 129, 130, 131. The Texas Bar suspended his license, and rendered him ineligible to practice law in Texas. Doc. 149-4. He is also licensed to practice in the Commonwealth of Virginia, and relied upon his Virginia bar license when seeking to practice before this Court. Doc. 130.

14. For over twenty years, until the *Ham* team surfaced this issue, Mr. Peterson ignored his obligation to pay his Texas State Bar dues, or properly surrender his license if he did not wish to keep his Texas State Bar license. Doc. 129; Doc. 130; Doc. 149-4; 149-5. We now understand that he also failed to disclose to this Court or the Texas State Bar his Virginia Bar reprimand.

15. Months before the DOJ hired Mr. Peterson in 2012, a Circuit Court Judge of the County of Stafford in the Commonwealth of Virginia found Mr. Peterson guilty of violating the principles of *Brady* in a criminal case, such that a new trial was ordered. Doc. 171-2.

16. In that case, Mr. Peterson withheld from the defense the pre-trial statement of a victim describing his assailants as black males, when the defendant was a light-skinned white and Hispanic male; and the pre-trial statement of an eyewitness saying she didn't see the assault at issue, but calling her at trial to say that she did. Doc. 171-22.

17. Following a jury verdict finding that defendant guilty of assault, and sentencing the defendant to more than six years in prison, the defendant's family began investigating. That defendant, Mr. Navarro, ultimately raised a *Brady* issue in support of a motion for a new trial.

18. Mr. Peterson claimed, in his attempt to uphold the Navarro conviction, that unless the defense specifically identified and requested contradictory eyewitness statements, he was not obligated to turn them over; and, in any event, if the defendant was not guilty of the charged offense, he must be guilty of something anyway. Doc. 171-88. Rejecting Mr. Peterson's position, the Virginia Court noted: "The burden is on the Commonwealth to produce *Brady* evidence, it's not up to defense counsel to know about statements and ask for them . . . . The Commonwealth's position in this case seem to be, well, maybe he didn't assault Goss, but he assaulted somebody, and other people assaulted somebody anyway, so it really doesn't make any difference, he is guilty. And I just don't think that's true in this case." Doc. 171-2, at 3-4.

19. Mr. Peterson secured his conviction in the Navarro case in the absence of the victim (and had that victim been called as a witness, he would have testified that the defendant was not his assailant).  Doc. 171-3.

20. In 2014, two years into his tenure with the DOJ, the Virginia State Bar issued a reprimand against Mr. Peterson for his conduct in the Navarro case.  Doc. 171-1.

21. While working at the DOJ, Mr. Peterson began working on capital cases, including *United States v. Rogers*.  In 2014, a DOJ trial attorney named Amanda Haines inherited Mr. Peterson's file in *Rogers*.  Ultimately, Ms. Haines swore under oath that her colleague Mr. Peterson violated *Brady* by destroying or failing to produce *Brady* evidence in that case.  Doc. 129-1.  He swears that he did not.  Doc. 178.

22. In 2015, DOJ attorney Peterson began his work in *United States v. Ham*.  Doc. 144 at 1.

23. In 2016, Mr. Peterson entered his appearance in this Court, while his license to practice in Texas was suspended in Texas, and without notifying this Court of that fact, or of his 2014 Virginia State Bar reprimand.  Doc. 87; Doc. 178 at 10-12.

24.  In early 2019, he was deposed for hours in *United States v. Rogers*, as was his co-worker, Amanda Haines.  *Rogers* Doc. 288.  Those documents remain sealed from our view, and we request that Mr. Peterson be ordered to provide them to this Court and to the defense.

25. On June 19, 2019, this Court held a hearing on Document 129, the defendant's motion for discovery, where the defense raised Mr. Peterson's Texas bar license status, among other things.[1]  Seated in front of the bar was Rich Burns, the Acting Director of the Capital Case Section of the DOJ  (Rich Burns later participated in answering the Court's discovery orders, at Document 142, and the Government's response at Document 178).

26. When the defense raised the issue of Mr. Peterson's suspended Texas Bar license, Mr. Peterson claimed that his license was "abandoned."  Doc. 130 at 7 n2.  The defense pointed out that it was not properly abandoned; rather, Mr. Peterson's Texas Bar license was administratively suspended.  Doc. 131 at 2-3.  On June 19, 2019, Defendant checked the status of Mr. Peterson's license, and Mr. Peterson appeared as "Not Eligible to Practice in Texas" and specifically that his license was under Administrative Suspension.

---

[1] In Defendant's Motion for Discovery, filed on March 26, 2019, the defense noted in FN3 that Mr. Peterson appeared to be ineligible to practice law in the State of Texas due to administrative suspension of his license by the State Bar of Texas.  Doc. 129 at 3.  In Opposition, the Government contended that Mr. Peterson was formerly licensed in Texas, but "[u]pon relocating to the east coast with his then fiancé, now wife, he became barred in Virginia and after a period of years abandoned his Texas bar license.  The printout reflects that abandonment, not discipline."  Doc. 130 at 7.

4

Doc. 149-4.  During the June 19, 2019 hearing, defense counsel noted that Mr. Peterson was "practicing law and signing pleadings in Texas while it appears that his bar license has been administratively suspended for failure to pay bar dues by the Texas State Bar." 6/19/19 Transcript at 12-13.  At no time during the hearing did the Government, or Mr. Peterson, deny the allegations raised by the defense.

27. After the June 19, 2019 hearing, Mr. Peterson surrendered his license to practice law in Texas.  Doc. 149-5.

28. Also, after the June 19, 2019 hearing, the DOJ, through Rich Burns, answered this Court's discovery order that there were "no complaints" against Mr. Peterson during his tenure with the DOJ.  Doc. 142.

29. In February of 2020, the defense learned of Mr. Peterson's Virginia State Bar reprimand, and by March, filed a motion for sanctions, informing this Court of the same.  Doc. 171.

30. The DOJ has now admitted in its Opposition that management was aware of Mr. Peterson's Virginia State Bar reprimand, and decided not to disclose it to this Court. Doc. 178 at 10 ("CCS management had become aware of the confidential Virginia bar matter during the pendency of the *Rogers* litigation").

31. Mr. Burns and Mr. Peterson knew of the Virginia State Bar reprimand as they sat in the courtroom during the June 19, 2019 hearing.  Doc. 178 at 10.  When this Court stated: "while not all violations of bar rules and ethics are crimes, we need to see those," neither DOJ representative chose to ask to approach the bench *ex parte* and explain to this Court the existence of the Virginia State Bar reprimand.  Instead, they now contend that they did not think they had to, because Mr. Peterson's *Brady* violation occurred in the months before Mr. Peterson began his employment with the DOJ, though the reprimand was issued during his tenure with the DOJ.

32. Providing no authority in support of its position, the Government asserts that the nature of the "private reprimand" somehow prohibited disclosure of the reprimand by either Mr. Peterson or the Government at the time the Court asked for the production of all violations of bar rules and ethics.  Doc. 178 at 11.

33. The DOJ is only now providing this Court with the Virginia State Bar reprimand because the defendant found it and informed the Court of its existence.  They also have filed some kind of internal DOJ Office of Professional Responsibility report from the *Rogers* case, without filing the sworn testimony of Ms. Haines in that case for this Court's review. Additionally, they filed the materials *ex parte*, and the defense cannot see the documents they reference.  Doc. 178.

5

34. No matter how the Government may try to contort the Court's language to justify its failure to disclose the Virginia reprimand, DOJ's statement that there were no complaints against Mr. Peterson during his tenure with the DOJ is false. Doc. 142.

35. Moreover, the Government, after all of this, continues to assert that Mr. Peterson did not need to report his Virginia State Bar reprimand to the Texas State Bar by insisting that, "as previously stated by Mr. Peterson, he abandoned his Texas bar license in approximately 1996. Mr. Peterson was never disciplined by the Texas bar for misconduct. At all times relevant to these proceedings, Mr. Peterson was a member in good standing of the Virginia State Bar." Doc. 178 at 12.

36. By finally properly surrendering his Texas State Bar license only *after* the June 19, 2019 hearing in this case, however, Mr. Peterson has demonstrated that he had never properly done so before. Doc. 149-5.

37. This portion of the opposition makes clear but one conclusion: Mr. Peterson did not report his Virginia State Bar reprimand to Texas. Yet, being licensed in Texas, the Texas State Bar rules required that he do so within 30 days. Texas Disciplinary Rules of Professional Conduct, Rule 8.03(f) ("A lawyer who has been disciplined by the attorney-regulatory agency of another jurisdiction must notify the chief disciplinary counsel within 30 days of the date of the order or judgment. The notice must include a copy of the order or judgment").

38. Ultimately, all of this is relevant to the issue of whether the DOJ and Mr. Peterson have properly turned over all *Brady* information to the defense in this case. The Government's assertions about the relationship between a defendants' culpability for the charged offense and prosecutors' constitutional discovery obligations run directly counter to five decades of case law and *Brady* itself, a case that was about the prosecution's failure to disclose evidence material to a defendant's punishment, not his guilt or innocence.

*Government's Application of Brady*

39. In its seminal decision in *Brady v. Maryland*, the United States Supreme Court affirmed the Maryland Court of Appeals' determination that John L. Brady was denied his right to due process when the State suppressed his co-defendant Donald Boblit's confession that he, rather than Brady, strangled to death the victim of the armed robbery that the two men committed together. *See Brady v. Maryland*, 373 U.S. 83, 86 (1963). The Court reached the conclusion that the evidence was "material" notwithstanding the state court's belief that there was "considerable doubt as to how much good Boblit's undisclosed confession would have done Brady" because the confession "implicated Brady as being the one who wanted to strangle the victim." *Id*. at 88 (quoting *Brady v. State*, 226 Md. 422 (MD 1961)). In affirming this result, the Court quoted the Maryland Court of Appeal's statement that a new penalty phase was nonetheless necessary because the penalty was a

question for the jury, and "[it] would be 'too dogmatic' for us to say that the jury would not have attached any significance to this evidence in considering the punishment of the defendant Brady." *Id.* (emphasis omitted).

40. The Government's suggestions in Document 178 that a defendant's guilt somehow moots its discovery obligations only heightens Mr. Ham's concerns that the Government has misapprehended what must be disclosed, and has substituted its own assessment of the potential significance of evidence when, of course, the United States Supreme Court has made clear that disclosure under *Brady* is necessary even if the Government rejects the credibility of a piece of evidence that is potentially favorable to a defendant. *Smith v. Cain*, 132 S. Ct. 627, 630 (2012) ("Again, the State's argument offers a reason that the jury *could* have disbelieved Boatner's undisclosed statements, but gives us no confidence that it *would* have done so") (emphasis in original); *Wearry v. Cain*, 136 S. Ct. 1002, 1007 (2016) ("Even if the jury—armed with all of this new evidence—*could* have voted to convict Wearry, we have 'no confidence that it *would* have done so'") (citing *Smith*) (emphasis in original); *Kyles v. Whitley*, 514 U.S. 419, 450-451 (1995) ("The State argues that the list was neither impeachment nor exculpatory evidence because [it was inconclusive]. Such argument, however, confuses the weight of the evidence with its favorable tendency . . . But however the evidence would have been used, it would have had some weight and its tendency would have been favorable to Kyles").

41. Mr. Ham is concerned about the Government's failure to disclose the Virginia bar reprimand, and the Government's engagement with this issue raises more global concerns about its candor with the Court and whether it will discharge its other discovery obligations in good faith and as required by the law; or if, again, it will adopt cramped and self-serving justifications for non-disclosure of relevant information.

*Request for Relief*

42. The defendant moves for relief in light of the DOJ's failure to disclose Mr. Peterson's Virginia State Bar reprimand to this Court upon order to do so, his failure to self-report his Virginia State Bar reprimand to the Texas State Bar, and his failure to give this Court the information at the time he entered his appearance in this case.

43. Rule 1 of Appendix A of the Local Rules for the Southern District of Texas states that "Lawyers who practice before this court are required to act as mature and responsible professionals, and the minimum standard of practice shall be the Texas Disciplinary Rules of Professional Conduct." The rule further states that "Violation of the Texas Disciplinary Rules of Professional Conduct shall be grounds for disciplinary action, but the court is not limited by that code."

44. Rule 8.04 of the Texas Disciplinary Rules of Professional Conduct states that a lawyer shall not "violate these rules, knowingly assist or induce another to do so, or do so" and

7

that a lawyer shall not "engage in the practice of law when the lawyer is on inactive status . . . when the lawyers right to practice has been suspended or terminated, including, but not limited to, *situations where a lawyer's right to practice has been administratively suspended for failure to timely pay required fees or assessments* or for failure to comply with Article XII of the State Bar Rules relating to Mandatory Continuing Legal Education[.]" Doc. 149-3 (emphasis added).

45. Further, the Texas Disciplinary Rules of Professional Conduct provide that a lawyer receiving an out-of-state bar reprimand report that reprimand to the Texas State Bar within 30 days. Texas Disciplinary Rules of Professional Conduct 8.03(f).

46. It is within this Court's authority to impose sanctions on the Government for violating the Local Rules for the Southern District of Texas and the Texas Disciplinary Rules of Professional Conduct.

47. Federal courts enjoy the inherent power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630–31 (1962)). This power includes the ability to discipline attorneys, punish for contempt, control admission to its bar, and vacate judgments. *Id.* at 43–44. It is well established "that a district court always has jurisdiction to impose sanctions designed to enforce its own rules." *Fleming & Assocs. v. Newby & Tittle*, 529 F.3d 631, 637–38 (5th Cir. 2008) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)).

48. Mr. Peterson's conduct in allowing his Texas Bar license to be suspended, his conduct in signing pleadings in the United States District Court for the Southern District of Texas while ineligible to practice law in Texas *without first disclosing that fact to this Court*, his conduct in failing to report his Virginia State Bar reprimand to this Court after being directed to do so, DOJ's conduct in asserting that there had been no complaints against Mr. Peterson during his tenure with DOJ when in fact DOJ knew that Mr. Peterson had been reprimanded by the Virginia State Bar during that tenure, and Mr. Peterson's apparent failure to self-report his Virginia State Bar reprimand to the Texas State Bar within 30 days, warrants the discovery and relief sought in Document 171.

49. Finally, the Government has now opened the door to providing this Court with select information from the *Rogers* litigation. They have chosen to supply an internal report from the investigation, without giving the Court, or this defendant, the opportunity to review the sworn testimony of Amanda Haines or James Peterson. They should be required to provide both of those items to this Court, along with all other pertinent information surrounding the sworn allegation that Mr. Peterson destroyed or failed to provide *Brady* information to the defense in that case. Additionally, the defendant requests the opportunity to review the materials that the Government did supply to the Court, even if under seal.

8

*Conclusion*

WHEREFORE, the defendant respectfully requests that this Court grant:

1. The relief requested in Document 171;

2. Disclose to the defense the sealed *ex parte* submissions attached to the Government's opposition at Document 178;

3. Order the Government to provide this Court with the sworn deposition testimony of Amanda Haines and James Peterson, along with all other information pertinent to the allegations that Mr. Peterson violated *Brady* in the *Rogers* litigation (in light of the Government's decision to provide the Court with a selected excerpt of materials from an internal DOJ investigation of the matter); and

4. All such other and further relief as this Court deems appropriate in the exercise of its discretion and in the interests of justice.

        Respectfully submitted,

        */s/ Kimberly C. Stevens*
        Kimberly C. Stevens
        Capital Resource Counsel
        Assistant Federal Public Defender
        1070-1 Tunnel Road, STE 10-215
        Asheville, NC 28805
        (336) 575-4337 – cell
        (336) 788-3779 – voicemail
        (336) 788-3836 – facsimile
        North Carolina State Bar # 20156

        */s/ Anthony S. Haughton*
        Anthony S. Haughton
        Capital Resource Counsel
        Assistant Federal Public Defender
        C/O SD Federal Public Defender
        Lyric Centre,
        440 Louisiana, Suite 1350

Houston, TX 77004-1669
(832) 287-9548 cell
(713) 718-4610 fax
Texas Bar No. 09234150

COUNSEL FOR JAMES WAYNE HAM

CERTIFICATE OF SERVICE

This is to certify that on the 25th day of March, 2020, a copy of the foregoing was served on counsel for the United States by electronic transmission.

*/s/ Kimberly C. Stevens*
Kimberly C. Stevens
Capital Resource Counsel
Assistant Federal Public Defender
1070-1 Tunnel Road, STE 10-215
Asheville, NC 28805
(336) 575-4337 – cell
(336) 788-3779 – voicemail
(336) 788-3836 – facsimile
North Carolina State Bar # 20156