UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. H-13-363 |
| | ) | |
| | ) | |
| JAMES WAYNE HAM | ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE
TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE**

The government responds that Mr. Ham was fully aware of his *Miranda* rights "having

been advised of the same both orally and in writing and his decision to abandon these rights was

free from intimidation, coercion or deception." Doc. 184 at 1. The government also suggests

that by Mr. Ham's mere, "initialing and signing the *Miranda* warning form after it was read to

him and by answering questions asked by the officers" that he waived his *Miranda* rights. *Id*.

The government further claims that their tactics involving threats surrounding the death penalty

or promises of leniency did not amount to coercion. These points are addressed briefly below.

**Mr. Ham did not make a knowing and voluntary *Miranda* waiver.**

By brushing past the instructions given to Mr. Ham at the start of his interrogation, the

government misses the crux of Mr. Ham's argument that the record does not support a knowing

waiver. What the record shows, when reviewed in full, is that Mr. Ham appeared to be simply

following along with the officer's initial instructions prior to the reading of *Miranda* warnings,

which were to hold a pen and initial where indicated. Texas Ranger Doolittle told Mr. Ham,

1

"And I'm going to let you borrow my pen.  Okay?  Hold on to that.  What I'm going to do is ask you to initial all these as we go through it."  Doc. 170 at 4.[1]

The government has the burden to prove, by a preponderance of the evidence, that the defendant's *Miranda* waiver and subsequent statement were voluntarily given.  *See Colorado v. Connelly*, 479 U.S. 157, 168 (1986). *United States. v. Rojas-Martinez,* 968 F.2d 415, 417 (5th Cir. 1992).  Mr. Ham's custodial statement is inadmissible at trial unless the government establishes that he "'knowingly and voluntarily waived [Miranda] rights when making the statement" *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (alteration in original) (citing *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)).

The government suggests that Mr. Ham's claim should be controlled by *Soffar v. Cockrell*, 300 F.3d 588 (5th Cir. 2002), stating that "[i]n the instant case, the defendant acted exactly as *Soffar* described."  Doc. 184 at 5.  However, *Soffar* is inapposite.  In *Soffar* the defendant was given several sets of *Miranda* warnings, by several different law enforcement officers and had his *Miranda* warnings explained to him by a magistrate.  The Court expressly found that *Soffar's* waiver was knowing:

> It is clear that Soffar made these statements with full knowledge of the consequences.  As described above, during the course of interrogation, he was warned that he might face the death penalty if convicted, was given at least four Miranda warnings, including one administered by a magistrate …

*Soffar*, 300 F.3d at 592.

And unlike Soffar who instigated the discussion of the offense, *id.* at 591, the interrogation here was instigated and directed by law enforcement.  Moreover, the issue in *Soffar* was about whether he had invoked his right to counsel. *Id.* at 591-92.

---

[1] Citations to Doc. 169, Exhibit 1, Video Transcript Ham Interview 5-19-13, are to the transcript page numbers.

Mr. Ham's argument is not that law enforcement did not read the rights out loud, or that Mr. Ham did not sign the waiver; it is that, as the video demonstrates, he did not knowingly, intelligently and voluntarily waive his Fifth Amendment rights.  The government's response is one of form; simply put, they claim that since Mr. Ham read and signed a *Miranda* waiver, and then spoke to law enforcement, that is enough to find that his waiver was knowingly and intelligently made.  As Mr. Ham laid out in his Motion, the Supreme Court has made clear that the inquiry into a *Miranda* waiver must show a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  "Only if the 'totality of the circumstances surrounding the interrogation' reveals both an un-coerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived."  *Moran v. Burbine,* 475 U.S. 412, 412 (citation omitted).

Mr. Ham respectfully requests that the Court, after review of the transcript of his interrogation (Doc. 170), suppress his statement and the evidence recovered, as the government cannot show that his confession was made knowingly and voluntarily.

**Mr. Ham's confession was coerced**

The transcript of the interrogation lays bare the fallacy in the government's claim that "[d]espite the assertion in defendant's motion, he was never threatened with death or promised life if he cooperated in the interview."  Doc. 184 at 3.  The transcript shows that is exactly what happened.  Mr. Ham was threatened that if he did not cooperate, and confess, it could cost him his life.  U.S. Postal Inspector Boyden said to Mr. Ham, "There's my people - - and I work for the U.S. government - - that want to know what we're going to do with James because he's a psycho.  He hides in the woods, and he shoots people and does other bad things. What can we do

3

to him? This is Texas."[2]  Doc. 170 at 150.  The government does not dispute that this is a reference to Texas' aggressive use of the death penalty.  Nor can it reasonably - why else would Boyden make this statement?

Boyden went on to compare Mr. Ham's fate to that of the defendant in the Boston Marathon bombing case:  "We do this for a living.  You know, in Boston when you blow up some people running and the federal government get involved, we cover our bases," to which Mr. Ham replied, "Uh-huh."  Boyden continued, "We hope that there's some kinds of crazy terrorist because we have just the right way to handle those things… And - - what is easier for us is that 'wasn't me' because we have the exact, correct way to deal with kind of thing. … And - - and we can take care of that all day long."  Doc. 170 at 178.  Boyden then directly said: "Okay. Do you want - - **you want to live** and you want - - you don't want to hurt yourself.  You want to be here for your children.  You want to be around for your mother …"  *Id*. at 195 (emphasis added).

In their response, the government also fails to address the promises of leniency made to Mr. Ham if he were to cooperate by confessing.  Doolittle said:

> I'm telling you.  I've got a vested interest in your future.  Okay.  I want to make sure James is going to be okay.  And in order to do that, I need your help.  If you're willing to help me, I think that - - that - - and I - - I can probably, you know, help you.  I - - I-- think that - - that I can tell people that James is an honest guy.  James is not a cold-hearted SOB, and that James is human because he makes mistakes.  Right?

---

[2] The government argues that Mr. Ham confessed after being promised that he would be taken into federal custody, rather than being left under Texas' jurisdiction.  The government reads this as a preference for Federal Custody over State custody whilst ignoring that the specter of State custody was raised by Boyden as a threat of being tried for death.  It is perhaps a twist of logic, given the numbers of death penalties sought and won by the state.  Yet here, if Mr. Ham had remained in Texas custody, it is unlikely that he could have been charged with a death eligible offense. Cf. Texas Penal Code § 19.03

Doc. 170 at 171.  Doolittle continued by saying: "… Let's move past the things that you saw, the things that happened that hurt you, and let's move into a mode that's going to help you… and you letting us help you."  *Id*. at 195.

U.S. Postal Inspector Boyden and Texas Ranger Doolittle respectively conveyed direct threats of the most severe punishment and illusory promises of assistance dependent on whether Mr. Ham cooperated by confessing to the offense.  Mr. Ham was offered a stark, but false, choice: continue to deny any role in the offense and find out what could be done to him in "Texas" for the offense of murder (get the death penalty), or implicate himself and obtain some sort of leniency.  Mr. Ham succumbed to the coercive conduct and confessed to the offense.

The due process voluntariness test calls for an examination of:  "'whether a defendant's will was overborne' by the circumstances surrounding the giving of [an incriminating statement]." *Dickerson v. United States,* 530 U.S. 428, 434 (2000) (*quoting Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973)).  "The due process test takes into consideration 'the totality of all the surrounding circumstances—both the characteristics of the accused and details of the interrogation.'" *Id*. (citation omitted).  "The determination 'depends upon a weighing of the circumstances of pressure against the power of resistance of the person confessing.'" *Id*. (*citing Stein v. New York*, 346 U.S. 156, 185 (1953)). "[A] defendant may establish that the confession was involuntary by demonstrating that a link exists between his confession and coercive police conduct." *United States v. Gomez*, No. EP-07-CR-1231-DB(3), 2007 U.S. Dist. LEXIS 80789, 2007 WL 3118297, at *2 (W.D. Tex. Oct. 18, 2007) (*citing United States v. Bell,* 367 F.3d 452, 461 (5th Cir. 2004)). However, "[e]ven where there is causal connection between police misconduct and a defendant's confession, it does not automatically follow that there has

been a violation of the Due Process Clause." *Colorado v. Connelly*, 479 U.S. 157, 164 n.2 (*citing*

*Frazier v. Cupp*, 394 U.S. 731, 739 (1969)).

Any statements that are the result of coercive action by the government that overwhelms

the will of the accused are involuntary, *Schneckloth,* 412 U.S. at 225, and inadmissible for any

purpose, *Mincey v. Arizona*, 437 U.S. 385, 398 (1978).

A confession is voluntary if, "'under the totality of the circumstances, the statement is the

product of the accused's free and rational choice.' To be considered voluntary, a confession

cannot be the product of 'official overreaching, in the form either of direct coercion or subtle

forms of psychological persuasion.' The government carries the initial burden of showing by a

preponderance of the evidence that the defendant waived [his] rights and that the statements [he]

made were voluntary." *U.S. v. Scurlock,* 52 F.3d 531, 536 (5th Cir. 1995).

Both threats and promises of leniency have been consistently shown to be factors that can

overwhelm the will of an accused.

In *U.S. v. Fernandes*, 285 Fed. Appx. 119, 124 (5th Cir. 2008), the Fifth Circuit stated:

It is true that certain direct or implied promises of leniency may be "so attractive they render a resulting confession involuntary" if the promise is not kept. *Streetman v. Lynaugh*, 812 F.2d 950, 957 (5th Cir. 1987). In *Bram v. United States,* the Supreme Court held that, for a confession to be voluntary, it may not be "extracted by any sort of threats or violence, or obtained by any direct or implied promises, however slight." 168 U.S. 532, 542-43, 18 S. Ct. 183, 42 L. Ed. 568 (1897) (emphasis added).
The Court, however, has retreated from a strict application of this position, holding that *Bram* does not state the standard for voluntariness. *Arizona v. Fulminante,* 499 U.S. 279, 285-86, 111 S. Ct. 1246, 113 L.Ed.2d 302 (1991). Instead, voluntariness must be determined based on the totality of the circumstances. *Id*. In that regard, the existence of a promise constitutes but one factor in that determination and does not render a confession involuntary per se. *Hawkins v. Lynaugh,* 844 F.2d 1132, 1140 (5th Cir. 1988).

In *Ellington*, a case with similar threats (though not as severe as the death penalty) and

promises of leniency to the ones made to Mr. Ham, Judge Ellis found that "threats of drastically

increased punishment, an attractive illusory promise" led to his will being overborne.  *U.S. v.*

6

*Ellington,* 2011 U.S. Dist.  LEXIS 34985 (2011) Slip Copy, 2011 WL 1232343 (S.D. Tex. March 31, 2011) at 23.  Ellington, a Harris County Sheriff's Deputy, was arrested on a ruse by the FBI and then shown a sealed indictment against him.  The arresting agents threatened him with increased charges in a second indictment, and potential charges against his wife if he did not cooperate.  They also, with the assistance of an AUSA, told him that if he provided sufficient cooperation it would prevent the more serious charges from being filed.  Like Mr. Ham, Ellington[3] was asked to make a written statement, and was told specifically to include something about the statement being of his own free will.  *Id.* at 18-20.

The Court noted that that, even despite Mr. Ellington's status as a law enforcement officer who had spent more than thirteen years in law enforcement, and that he personally had advised suspects of their *Miranda* rights between ten and twenty times, his will was overborne by "threats" and "illusory promises of leniency" and the sense that if he didn't cooperate at that moment, the opportunity would be lost.  *Ellington*, 2011 WL 1232343, at \*12-13, \*16

Any reasonable person in Mr. Ham's situation would interpret Postal Inspector Boyden's and Texas Ranger Doolittle's statements as conveying the threat that if Mr. Ham did not cooperate he would be tried for death, and the promise that if he cooperated, the officers would assist him in avoiding death.  This is objectively coercive conduct.  Mr. Ham requests that the Court rule that his confession and the evidence subsequently found because of the confession be suppressed because his confession was made as a result of his will being overborne by these threats and promises.

**Suppression of the physical evidence.**

---

[3] Mr. Ellington's conditions of confinement were found not to be coercive.  He was interrogated in a large conference room, was offered water and a meal, and was permitted to smoke and make a telephone call. Nonetheless, the court found that his statement was coerced.

7

The government does not contest the defendant's position that if Mr. Ham's confession was involuntary, the evidence obtained as a result of the confession should likewise be suppressed.

**Conclusion.**

Mr. Ham respectfully requests that the Court enter an order suppressing the evidence of his video, oral, and written statements.  Mr. Ham also requests that the Court order that the physical evidence obtained as a result of Mr. Ham's interrogation be suppressed, including a 30/30 rifle, 15 loose cartridges, 4 cartridges from the magazine of the rifle, 1 chambered cartridge from the rifle and 4 shell casings located at the scene of the shooting.

Mr. Ham respectfully suggests that the statements of law enforcement in the transcripts alone allow the Court to grant his suppression motion without need for an evidentiary hearing; or in the alternative, if the Court believes further information is required, the defendant requests an evidentiary hearing.

Respectfully submitted,

/s/ Kimberly C. Stevens
Kimberly C. Stevens
Capital Resource Counsel
Assistant Federal Public Defender
1070-1 Tunnel Road, STE 10-215
Asheville, NC 28805
(336) 575-4337 – cell
(336) 788-3779 – voicemail
(336) 788-3836 – facsimile
North Carolina State Bar # 20156

/s/ Anthony S. Haughton
Anthony S. Haughton
Capital Resource Counsel
Assistant Federal Public Defender
C/O SD Federal Public Defender
Lyric Centre,
440 Louisiana, Suite 1350
Houston, TX 77004-1669
(832) 287-9548 cell

(713) 718-4610 fax
Texas Bar No. 09234150

COUNSEL FOR JAMES WAYNE HAM

CERTIFICATE OF SERVICE

This is to certify that on the 2nd day of April, 2020, a copy of the foregoing was served on counsel for the United States by electronic transmission.

*/s/ Kimberly C. Stevens*
Kimberly C. Stevens
Capital Resource Counsel
Assistant Federal Public Defender
1070-1 Tunnel Road, STE 10-215
Asheville, NC 28805
(336) 575-4337 – cell
(336) 788-3779 – voicemail
(336) 788-3836 – facsimile
North Carolina State Bar # 20156